UNITED STATES of America, Appellee,

v.

Arnold F. HOHN, Appellant.

No. 92–2653.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1993.

Decided Nov. 8, 1993.

James M. Davis, Omaha, NE, argued, for appellant.

Michael P. Norris, Omaha, NE, argued, for appellee.

Before MAGILL, Circuit Judge, LAY, Senior Circuit Judge, and HANSEN, Circuit Judge.

MAGILL, Circuit Judge.

Arnold F. Hohn (Hohn) appeals from the final judgment entered in the district court[1] upon a jury verdict of guilt on all offenses. Hohn's appeal challenges three rulings of the district court. Hohn contends that the district court erred by denying his motion to dismiss on Speedy Trial Act grounds, by denying his motion to suppress evidence, and, finally, by denying his motion to dismiss Count I of the indictment which charged him with the distribution of drugs within 1000 feet of a public school. For the reasons discussed below, we affirm.

## I. BACKGROUND

The Omaha, Nebraska, police received information from a confidential informant implicating Hohn as a methamphetamine dealer distributing from his home. The informant told the police, among other details, that Hohn was "paranoid," had a vicious dog, and always had at least one gun on his person. The police investigated the information received from the informant and, in the course of the police investigation, Hohn's curbside garbage receptacle was inventoried. The garbage inventory and subsequent testing revealed, among other drug-related items, a zip-lock bag and sno-seals[2] that both tested positive for methamphetamine. The police obtained a "no-knock" search warrant pursuant to Nebraska state law. Hohn was arrested when the search of his residence on June 20, 1990, resulted in the recovery of approximately sixteen grams of methamphetamine, drug paraphernalia, multiple weapons, and money.

Hohn's residence was located within 177 feet of the Central Park Elementary School (Central Park). Central Park's last day of classes for the 1989–90 school year was June 7, 1990. Because the Omaha public school system planned to remodel and attach an addition to the present building, the student body was temporarily reassigned to another building for the 1990–91 school year. From the last day of classes through the date of Hohn's trial, Central Park was carried on the school system's books as a public school. On June 20, 1990, the date of Hohn's arrest, the public maintained access to the school grounds for recreational purposes.

Hohn was consequently indicted on August 24, 1990, on three counts: (I) possession with intent to distribute methamphetamine within 1000 feet of real property comprising a public school in violation of 21 U.S.C. § 845a; (II) use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and (III) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Hohn made an initial appearance at his arraignment on August 30, 1990.

To gain additional time for pretrial motions, the government and Hohn entered into a stipulated agreement to extend the time for pretrial motions until October 19, 1990. The court then entered an order stating that the time between September 19 and October 19

---

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

2. Sno-seals are folded paper used to hold powdered substances such as cocaine and methamphetamine.

was excludable for Speedy Trial Act purposes.

On October 1, 1990, a pretrial services officer filed a petition for action on conditions of pretrial release (the petition), thus notifying the court that Hohn's urine specimens had tested positive for amphetamine and methamphetamine. The court consequently held a hearing regarding that petition on October 11, 12, and November 9, 1990. The defendant and the government both presented evidence and argument at this hearing. The court found on November 9 that the government had presented clear and convincing evidence that Hohn had violated his conditions of release and ordered Hohn detained.

Hohn's counsel filed a motion to withdraw on December 10, 1990, and the court allowed Hohn's counsel to withdraw on December 18, 1990. On that same date, Hohn's new counsel filed a motion to reconsider detention and urged the court to place Hohn in drug treatment as opposed to continuing to detain him. The court requested pretrial services to investigate Hohn's eligibility for drug treatment and, on December 20, pursuant to pretrial services' advice, released Hohn and ordered him to complete inpatient drug treatment or return to custody. The December 20, 1990, order specifically stated that if Hohn successfully completed drug treatment, a subsequent hearing would be held regarding further terms and conditions of release. Hohn entered inpatient treatment at St. Gabriel's Alcohol and Drug Treatment Center on December 20, 1990.

Hohn filed a motion to dismiss on Speedy Trial Act grounds on January 14, 1991. Meanwhile, on January 23, 1991, Hohn completed drug treatment and was released pursuant to a court order specifying his terms and conditions of release.

## II. DISCUSSION

### A. The Speedy Trial Act Claim

The Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1988), requires that a criminal defendant be tried within seventy days of the indictment or the date of first appearance before a judicial officer, whichever is later. *Id.* § 3161(c)(1). The statute allows, however, certain delays to be excluded for purposes of calculating the seventy-day time limit. *See id.* § 3161(h). If the government fails to comply with the terms of the Speedy Trial Act, a defendant may move for dismissal either with or without prejudice. *Id.* § 3162(a). The district court's legal findings are reviewed de novo, but factual findings are reviewed under the clearly erroneous standard. *United States v. Hoslett,* 998 F.2d 648, 652 (9th Cir.1993).

Hohn argues that the court incorrectly excluded two periods of delay from its calculation for Speedy Trial Act purposes: (1) the period from October 20 through November 9 (twenty-one days), during which the court considered pretrial services' petition[3]; and (2) the period from December 21 through January 13, 1991 (twenty-four days), during which Hohn was treated as an inpatient at St. Gabriel's Alcohol and Drug Treatment Center.[4] The district court[5] excluded both these periods of time from its calculation of the seventy-day limit because it found that the first period was excludable pursuant to § 3161(h)(1)(F) as a pretrial motion and the second period of time was excludable pursuant to either § 3161(h)(1)(F) or, in the alternative, § 3161(h)(4). We find that for purposes of determining whether the Speedy

---

3. Pretrial services' petition was filed on October 1. However, the period of time up to and including October 19 is not in dispute.

4. The status of the other days is not in dispute. The parties agree that the period from August 31, 1990, through September 18, 1990, counts towards the 70–day limit (a total of 19 days). The parties likewise agree that September 19 through October 19 is excludable pursuant to the stipulated agreement. The parties agree that the period of time from November 10 through December 9 counts towards the 70–day limit (bringing the

total to 49 undisputed days). The parties also agree that December 10 through December 20 is excludable due to the motions that were filed before the court.

5. Magistrate Judge Richard G. Kopf made these findings. The district court, after a de novo review, adopted the magistrate judge's report in its entirety. The magistrate judge's findings subsequently adopted by the district court will be referred to as the district court findings.

Trial Act seventy-day limit had lapsed, both periods of time were properly excluded from the district court's calculation of time.

## 1. October 20, 1990, through November 9, 1990

■ The period of time from October 20 through November 9 was properly excluded pursuant to § 3161(h)(1)(F) (subsection (F)) as a pretrial motion. The Speedy Trial Act allows for the exclusion of periods of delay due to proceedings concerning the defendant. The Act states in pertinent part:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

. . . .

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(F).

■ Hohn contends that the period of delay from October 20 through November 9 cannot be excluded pursuant to subsection (F) because subsection (F) refers to pretrial motions and not petitions. Hohn further contends that because the petition was filed by pretrial services, and not a party, the court may not exclude this period of delay pursuant to subsection (F). Finally, Hohn contends that when the court granted continuances from the hearing's initial date of October 11 to October 12 and then to November 9, the court erred when it failed to make the specific statutory finding required pursuant to § 3161(h)(8)(A).

Section 3161(h)(1) specifically states that the periods of delay are "including but not limited to," thus creating in the statute the presumption that the scope of its enumerated delays are not to be interpreted narrowly. A motion is an application to the court for an order. Fed.R.Crim.P. 47. Once pretrial ser-

vices had filed its petition, the government, now notified of Hohn's possible violation of his terms of release, was requesting the court to revoke Hohn's release—issue an order—when it presented its argument and evidence before the court on October 11, 12, and November 9.

We find that pretrial services' petition is the functional equivalent of a motion to revoke detention. Pretrial services discovered through urine testing that Hohn tested positive for methamphetamine. The use of methamphetamine was a violation of Hohn's original conditions of release and hence pretrial services was obligated to inform the court of its discovery. After the petition was filed, the government proceeded to prosecute the claim that Hohn had violated the court's original conditions of release. The court noted in its order revoking release that the government had established clear and convincing evidence that the defendant violated a term of release. Hence, the court treated the petition precisely as it would have treated a motion for revocation of release brought either by the court's own motion or by the government. If the initial filing with the court had been brought by the government as a motion, Hohn's contention that the period from October 20 through November 9 cannot be excluded for Speedy Trial Act purposes would be untenable.

Petitions may be the functional equivalent of other recognized § 3161(h)(1) delays. See *United States v. Davenport,* 935 F.2d 1223, 1233 (11th Cir.1991); *accord United States v. Tyler,* 878 F.2d 753, 757 (3d Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 254, 107 L.Ed.2d 203 (1989). In *Davenport,* the defendant filed a petition for a writ of habeas corpus alleging that his pretrial detention violated the Speedy Trial Act. 935 F.2d at 1231. The *Davenport* court found that an extraordinary writ such as a petition for a writ of habeas corpus was functionally equivalent to an interlocutory appeal which is statutorily excludable under § 3161(h)(1)(E), because both an interlocutory appeal and a petition for a writ serve the same underlying purpose. *Id.* at 1233. Hence, in *Davenport,* time related to the petition for a writ's determination tolled the Speedy Trial Act clock.

Similarly, we find that pretrial services' petition for action on conditions of pretrial release is the functional equivalent of a motion to reconsider pretrial release, because both serve the same underlying purpose.

■ Motions excludable under subsection (F) include *any pretrial motion* and are not limited to those motions enumerated in Federal Rule Criminal Procedure 12(b)(2). *United States v. Wilson*, 835 F.2d 1440, 1443 (D.C.Cir.1987). Pretrial motions are excludable under subsection (F) because these motions require both court and party time. *Id.* Delay attributable to motions to revoke pretrial detention, from the date of filing until the matter is taken under advisement by the court,[6] is excluded pursuant to subsection (F). *United States v. Bowers*, 834 F.2d 607, 609 (6th Cir.1987). Thus, because pretrial services' petition is the functional equivalent of a motion to revoke pretrial detention, we find the time from the date the petition was filed until its final disposition at the end of the hearing is excluded for purposes of the Speedy Trial Act.

■ A nonparty to a criminal action may initiate a delay excludable pursuant to § 3161(h). Excludable delays may be caused by co-defendants. *See id.* § 3161(h)(7). Excludable delays may also be initiated by the court. *See, e.g., id.* § 3161(h)(1)(B), (C), (3)(A), (8)(A). The Pretrial Services Act of 1982[7] established pretrial services in each judicial district in order to assist judicial officers both in making pretrial release decisions and to supervise and monitor the conditions of release. S.Rep. No. 97–77, 97th Cong., 2d Sess. 1 (1981), *reprinted in* 1982 U.S.C.C.A.N. 2377. The actions of pretrial services officers are both a service to the court and an extension of the court. Any action taken by pretrial services is in effect an action by the court and thus contemplated by Congress in enacting the Speedy Trial Act.

■ Hohn's argument that the district court erred when it failed to make a § 3161(h)(8)(A)[8] statutory finding is without merit. Section 3161(8)(A) allows a court to grant continuances should that court find it is in the interests of justice to do so after weighing the best interests of the defendant and the public to a speedy trial. The court under § 3161(8)(A) is required to make explicit findings; the court is not required to make explicit findings for § 3161(h)(1) delays. Section 3161(8)(A) provides an additional basis, *in addition to the (h)(1) bases,* for the court to grant a delay which will toll the Speedy Trial Act clock. For example, § 3161(8)(A) is frequently used by the court to grant continuances which will toll the Speedy Trial Act clock when, due to complexities in the case, counsel requires additional time to prepare. *See United States v. Driver*, 945 F.2d 1410, 1414 (8th Cir.1991), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 1209, 117 L.Ed.2d 448 (1992); *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir.1982), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983). The district court did not err when it allowed the hearing to be continued without making findings; here, the time was properly excluded pursuant to subsection (F), not § 3161(8)(A).

**2. December 21, 1990, through January 13, 1991**

■ We further find that the period of time from December 21, 1990, through Janu-

---

**6.** Subsection (F) excludes time from a motion's filing until either the motion is disposed of or taken under advisement. If the court requires time to consider the motion after all information is available, this time is limited to 30 days pursuant to § 3161(h)(1)(J). *Henderson v. United States*, 476 U.S. 321, 329, 331, 106 S.Ct. 1871, 1876, 1877, 90 L.Ed.2d 299 (1986).

**7.** *See* 18 U.S.C. § 3152 (1988).

**8.** 18 U.S.C. § 3161(h)(8)(A) states in pertinent part:
 Any period of delay resulting from a continuance granted by any judge … if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth … its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

ary 13, 1991, was properly excluded for Speedy Trial Act purposes pursuant to subsection (F).[9] Hohn filed a motion to reconsider detention on December 18.[10] The district court requested the advice of pretrial services. After a hearing on December 20, 1990, and upon the advice of pretrial services, the court entered an order conditionally releasing Hohn on December 20 in order that Hohn could be evaluated at St. Gabriel's Alcohol and Drug Treatment Center. If Hohn was not accepted into drug treatment, he was to be returned to the custody of the United States Marshal. If Hohn failed to successfully complete drug treatment, he was to be returned to the custody of the Marshal. Only upon successful completion of the drug treatment program would the district court then consider granting a release order with specific terms and conditions.

■ A motion to reconsider pretrial detention is a pretrial motion for which time is excludable pursuant to subsection (F). *United ed States v. Noone*, 913 F.2d 20, 27 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991). Thus, when Hohn filed his motion to reconsider detention on December 18, subsection (F) tolled the Speedy Trial Act clock until all information necessary to that motion's determination was before the court. Subsection (F) excludes the period of time after a motion is submitted but before it is under advisement. *Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877. That is, subsection (F) excludes the period of time after a hearing in which the court record may remain open to receive further information. Here, the district court did not receive all the information necessary to determine the motion to reconsider detention until January 23, 1991, when Hohn com-

pleted drug treatment. The district court's order setting conditions of release was not issued until January 23, 1991. Consequently, during the entire time period at issue, from December 21 until January 13, 1991, the Speedy Trial Act clock was tolled pursuant to subsection (F).

We therefore find that both the period of time from October 20 through November 9 and the period of time from December 21 through January 13, 1991, were properly excluded pursuant to subsection (F). Hence, the motion to dismiss was properly denied because only forty-nine nonexcludable days had passed since Hohn's arraignment before a judicial officer.

### B. Other Claims

Hohn makes two other claims: (1) that the district court erred when it denied his motion to suppress evidence, and (2) that the district court erred when it denied his motion to dismiss Count I.

■ Hohn asserts that evidence obtained from the search of his home should not have been admissible at his trial because the search warrant was defective. He claims that the search warrant was issued without probable cause, and he claims that the state-issued no-knock search warrant [11] violated 18 U.S.C. § 3109. Neither contention has merit. The district court properly concluded that the affidavit supporting the search warrant set forth probable cause, because the police officers sufficiently corroborated the information given by the informant. Furthermore, 18 U.S.C. § 3109 [12] is inapplicable. *See United States v. Moore*, 956 F.2d 843 (8th Cir.1992). The issue is not whether the

9. The district court found this period of time was also excludable pursuant to § 3161(h)(4); that is, the district court found that Hohn while in drug treatment was physically unable to stand trial. Because we find this period of time was properly excluded pursuant to subsection (F), we need not reach the issue of Hohn's physical availability for trial while in drug treatment.

10. Hohn concedes that subsection (F) excludes the period of time from December 18 through December 20 and is therefore only contending that the period from December 21 through January 13 was improperly excluded.

11. In Nebraska no-knock warrants are expressly allowed. Neb.Rev.Stat. § 29–411 (1989).

12. 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

warrant complied with § 3109 but whether the state officials complied with Nebraska law and the Fourth Amendment. *See id.* at 848. We find that the district court properly denied the motion to suppress the evidence obtained from this warrant because it was supported by probable cause and complied with Nebraska law and the Fourth Amendment.

▆ Hohn also contends that Count I of the indictment should have been dismissed because he did not distribute drugs within 1000 feet of a school. The schoolyard statute [13] enhances the penalty for individuals convicted of distributing drugs within 1000 feet of a school. 21 U.S.C. § 860 (Supp. III 1988). Hohn's residence was located within 177 feet of Central Park. He argues that Central Park was not a public school at the time of the offense because it was not operational. That is, Hohn maintains that because Central Park was closed for remodeling at the time of the arrest that it was not a school as a matter of law.

The schoolyard statute, however, is unambiguous. For conviction, it simply requires that the defendant have an intent to distribute (or manufacture) a controlled substance and at the time be within 1000 feet of a school. *See* 21 U.S.C. § 860. Nothing in the statute requires that school be in session or that children be near or around the school at the time of the offense. *See United States v. Jones,* 779 F.2d 121, 123 (2d Cir.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986). In *Jones,* the defendant argued that the schoolyard statute did not apply to his distribution of drugs because the offense occurred at night without any potential for affecting children. *Id.* The *Jones* court rejected this argument finding, as we do, that the language in the statute is unambiguous and does not require that a school be open at the time of the offense. *Id.*

The magistrate judge found in an opinion adopted by the district court that as a preliminary matter there was sufficient evidence to find that Central Park was a school. The final determination as to whether Central Park met the statutory definition of school was determined by the magistrate judge to be a question of fact appropriate for the jury. *See also United States v. Brookins,* 919 F.2d 281, 284 (5th Cir.1991) (holding that there was sufficient evidence before the jury for it to find by any common definition that the institution in question was a school). We agree. The Omaha public school system continued to carry Central Park on its books as a school. The children continued to use the school grounds. A school need not be in session to trigger the schoolyard statute's penalties. The district court did not err when it denied Hohn's motion to dismiss Count I.

### III. CONCLUSION

Accordingly, we find that the district court properly denied Hohn's motion to dismiss on Speedy Trial Act grounds, his motion to suppress evidence, and his motion to dismiss Count I of the indictment. We affirm the judgment of the district court.

---

**13.** Hohn was charged in Count I with a violation of 21 U.S.C. § 845a; however, this statute has been transferred to 21 U.S.C. § 860.