# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————————

No. 01-3177

—————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Timothy Donald Koons, | * | |
| | * | |
| Appellant. | * | |

—————————

Submitted: May 15, 2002
Filed: August 29, 2002

—————————

Before MURPHY, HEANEY, and BRIGHT, Circuit Judges.

—————————

MURPHY, Circuit Judge.

Timothy Donald Koons pled guilty to possession of methamphetamine with intent to distribute within 1,000 feet of a public playground, in violation of 21 U.S.C. §§ 841(a) and 860(a), and to criminal forfeiture of property related to drug trafficking, under 21 U.S.C. § 853. On his appeal Koons challenges the constitutionality of 21 U.S.C. § 860(a) and argues that the district court[1] erred by

———————————————

[1] The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

denying his motion to suppress and by not granting him a safety valve reduction or downward departure at sentencing. We affirm.

The attorney for Emmet County, Iowa received a tip on June 28, 2000 from Albert Bahr that Koons was dealing in illegal drugs. At that time Koons was living in the town of Estherville within 1,000 feet of Mickelson Park, which the parties stipulated is a public park containing at least three separate apparatus intended for the recreation of children. See 21 U.S.C. § 860(e). The county attorney passed on the tip to the Estherville police chief, who turned the investigation over to Officer Paul Budach. Budach happened to be a cousin of Koons, and he was informed that Albert Bahr was the source of the tip and knew that he was the father of Cindy Bahr, the girlfriend of Koons.[2]

Budach sought to corroborate the tip and did a record search on Koons which showed that he had been convicted of marijuana possession in 1986. Budach subsequently took two trash bags from the curb outside Koons' residence and searched them. In one bag he discovered mail addressed to Koons, several scorched "foilies" which are used to smoke methamphetamine, and numerous plant stems that appeared to be marijuana. Budach performed a field test on one of these stems, using a narcotics identification kit or NIK test. That test is designed to indicate the probable presence of narcotics, and the stem tested positive for tetrahydrocannabinol (THC), a chemical found in marijuana and hashish.[3]

---

[2] The exact status of the relationship between Cindy Bahr and Koons at that time is unclear. The search warrant application dated July 14, 2000 refers to Cindy Bahr Koons. Cindy testified on November 17, 2000 that Koons was her fiancé. Koons refers to her as his wife in his brief.

[3] Budach later assisted defense counsel to obtain other samples of the marijuana stems for independent testing in preparation for the suppression hearing. The independent testing results confirmed the presence of THC in the stems.

Budach then prepared an application for a search warrant and a supporting affidavit. The affidavit stated that Budach had conducted an inspection of Koons' trash in response to a tip received by the county attorney that Koons was "dealing illegal drugs." The affidavit further stated that the trash inspection had yielded "numerous marijuana stems" which had "tested positive for THC content" in a NIK test. The application requested authorization to search Koons' residence, the outbuildings on his property, his 1996 Blazer, and his person for "illegal drugs, drug paraphernalia, cash money, and drug transaction records." Budach did not mention in the affidavit that the trash had also contained scorched foilies suggestive of methamphetamine use, that Koons had been convicted of marijuana possession in 1986, that he was a cousin of Koons, or that the tip had come from Cindy Bahr's father.

A state magistrate reviewed the application and affidavit and issued a search warrant. Budach testified at the suppression hearing that the magistrate asked him if he affirmed the truth of everything in the affidavit but did not ask any other questions. Budach also testified that he did not intentionally omit any relevant information from the affidavit or include any untrue information in it.

Budach and Officer Greg Van Langen waited until Koons returned to his residence and then approached him in the driveway and told him they had a search warrant. Koons agreed to let them in, and Budach read him the warrant and asked if there were any illegal drugs in the residence. Koons said there was a bag of marijuana underneath a mattress in the main bedroom. Eventually Koons produced $310 in cash from his pockets, and Van Langen detected a lump in the top of one of his front pockets which turned out to be a plastic bag containing 15 grams of methamphetamine. Van Langen also felt a long skinny object in his back pocket, which proved to be an empty pen casing which Koons admitted he used to smoke methamphetamine.

-3-

The search of the bedroom turned up a number of items specified in the warrant. On top of a dresser Budach found a partial marijuana cigarette, a piece of paper with marijuana scattered on it, a Tupperware bowl wrapped with green duct tape, and a small black book containing nicknames and dollar amounts owed. In the Tupperware bowl were three baggies containing individually wrapped quantities of methamphetamine. In the top drawer of the same dresser Budach found a baggie containing approximately 15 grams of marijuana and a pouch containing approximately $3,250 in cash and more marijuana. On top of a different dresser was a foily containing approximately one gram of methamphetamine and another small black book containing drug notes. The amount of methamphetamine found in the residence was later determined to be 89.95 grams.

Budach placed Koons under arrest. While they waited for another officer to arrive, Koons looked over the search warrant and asked why Cindy's name was on it. Budach said that he thought she lived there. Koons said she had moved out a month earlier, and all the drugs belonged to him. Budach and Van Langen concluded their search and found another small black book with drug notes. While Koons was being booked at the station, he again admitted to using methamphetamine.

Koons was indicted on charges of possession of 89.95 grams of methamphetamine with intent to distribute within 1,000 feet of a public playground, 21 U.S.C. §§ 841(a), 860(a) (count one), possession of a firearm as a user of controlled substances,[4] 18 U.S.C. §§ 922(g)(3), 924(a)(2) (count two), and criminal forfeiture of property related to drug trafficking, 21 U.S.C. § 853 (count three). He moved to suppress evidence obtained from the search of his residence on the ground that the search warrant was not supported by probable cause. He also moved

---

[4] A 12 gauge shotgun and a .22 caliber rifle belonging to Koons had been seized from his brother's house several months before the search at his own residence.

separately to strike all penalties for violation of 21 U.S.C. § 860(a), arguing that Congress lacked power under the Commerce Clause to enact that statute.

A suppression hearing was held before a magistrate judge, who concluded that Budach's affidavit was insufficient to establish probable cause, that Budach's search could not have been in good faith, and that the physical evidence seized and virtually all of the incriminating statements made by Koons resulted from an illegal search. The magistrate judge recommended that the motion to suppress be granted except for one statement made by Koons. The United States filed objections to the magistrate judge's report and recommendation.

After a de novo review, the district court denied the motion to suppress except for a statement made by Koons during the booking process before he received Miranda warnings. The court concluded that both officers had acted in good faith in executing the search warrant regardless of whether or not the supporting affidavit actually showed probable cause. The court also denied the motion to strike penalties because it concluded that 21 U.S.C. § 860(a) is constitutional.

Koons stipulated to possession of 1,254.03 grams of methamphetamine[5] and pled guilty to counts one and three of the indictment. Count two, the firearms charge, was to be dismissed. Prior to sentencing he sought a safety valve reduction, see 18 U.S.C. § 3553(f); United States Sentencing Commission Guidelines Manual [USSG] § 5C1.2, and he also asked for a downward departure under USSG § 5K2.0 on the grounds that he had posed no real danger by his "proximity to a park," as well as his exceptional personal and family circumstances and willingness to cooperate. The district court declined to grant a reduction or a departure and stated that it lacked

_____

[5] The stipulated amount included 89.95 grams seized from Koons' residence, 800.88 grams reflected in the drug transaction records, 165.20 additional grams that Koons admitted to having purchased for distribution but that was not found by police, and drug proceeds equivalent to 198 grams.

authority to depart downward on the basis of his actual danger argument "in circumvention around the Congressional statute in 860." The district court calculated the sentencing range at 97 to 121 months and sentenced Koons at the low point to 97 months.

Koons argues on appeal that the search warrant lacked probable cause and that all evidence obtained under its authority should have been suppressed. He contends that Budach's affidavit was "bare bones," that reliance on it was unreasonable because it lacked indicia of probable cause, and that the magistrate who issued the search warrant had abandoned his judicial role. Koons argues that 21 U.S.C. § 860(a) is unconstitutional because its enactment exceeded the scope of congressional power under the Commerce Clause. He also claims that the district court erred by denying him a safety valve reduction, by concluding that it lacked authority to depart downward on the basis that his location presented no added danger, and by declining to depart on the basis that a combination of factors took his situation out of the heartland of cases. The government responds that the district court was correct in its rulings on these issues.

We review factual findings of the district court for clear error, United States v. Reinholz, 245 F.3d 765, 773 (8th Cir. 2001), but our review is de novo for denial of a suppression motion, United States v. Davis, 288 F.3d 359, 362 (8th Cir. 2002), for ruling on the constitutionality of a statute, United States v. McMasters, 90 F.3d 1394, 1397 (8th Cir.1996), for interpreting or applying statutes, United States v. Auginash, 266 F.3d 781, 783 (8th Cir. 2001), or for determining whether a court has discretion to depart on a particular basis. United States v. Beltran, 122 F.3d 1156, 1158 (8th Cir. 1997).

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. A search is supported by probable cause if facts are shown making it likely that evidence of a crime will be found in the place to be searched. United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000). An informant's tip is sufficient to support probable cause if the totality of the circumstances shows that it is reliable. Illinois v. Gates, 462 U.S. 213, 238 (1983).

When a search warrant is not supported by probable cause, any evidence obtained as a result is generally inadmissible, Mapp v. Ohio, 367 U.S. 643, 655-57 (1961), but there is an exception for evidence obtained by an officer who relied in objective good faith on a search warrant. United States v. Leon, 468 U.S. 897, 922 (1984). A court may take up the issue of whether the Leon good faith exception applies without first deciding the issue of probable cause, id. at 924-25; United States v. Frangenberg, 15 F.3d 100, 102 (8th Cir. 1994), but the issues are not unrelated. It is objectively unreasonable to rely on a warrant lacking indicia of probable cause or based on an illegitimate affidavit. Leon, 468 U.S. at 923. Reliance on a warrant is also objectively unreasonable if an officer has reason to know that the warrant was obtained through misrepresentations or omissions, that the issuing magistrate abandoned the judicial role in issuing it, or that the warrant is facially deficient in particularizing the place to be searched or the things to be seized. Id. The totality of the circumstances are considered in determining whether an officer acted in objective good faith under Leon, id. at 922 n.23, including consideration of anything the affiant knew but did not include in the affidavit. United States v. Frangenberg, 15 F.3d 100, 103 (8th Cir. 1994).

Koons argues that Budach's affidavit is "bare bones" and so lacking in indicia of probable cause as to render the officers' reliance on it objectively unreasonable. A bare bones affidavit is one which relies on uncorroborated tips, see Aguilar v. Texas, 378 U.S. 108, 109 (1964), or mere suspicion, see Nathanson v. United States, 290 U.S. 41, 44 (1933), but the affidavit in this case involved a corroborated tip. The

Supreme Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work." Gates, 462 U.S. at 241. An officer "may rely upon information received through an informant...so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge," id., quoting Jones v. United States, 362 U.S. 257, 269 (1960). Budach's affidavit stated that his search of Koons' trash uncovered numerous stems of what appeared to be marijuana and which were confirmed to be marijuana by chemical test. The fact that numerous stems of marijuana plant material were in Koons' trash corroborated the tip that he was dealing drugs and increased the credibility of the informant. See United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) (corroboration of tip creates "permissible inference that the informant is reliable"). Moreover, Budach's investigation confirmed the occurrence of illegal activity and not merely the occurrence of innocent activity. Cf. Gates, 462 U.S. at 243 n.13; Draper v. United States, 358 U.S. 307, 312-13 (1959).

Budach took the information to a magistrate who concluded it was legally sufficient to show probable cause and who issued a search warrant. It was not objectively unreasonable for the officers to proceed to execute the warrant in these circumstances where there was evidence to corroborate the tip and where an independent magistrate had found that the affidavit stated probable cause. It is also not irrelevant on the issue of objective good faith that our court has upheld affidavits based on tips of drug activity which have been corroborated by police work which uncovered drug residue in a suspect's trash. United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001); United States v. Hohn, 8 F.3d 1301, 1306 (8th Cir. 1993).

There is no evidence that Budach's affidavit contained misrepresentations, and the facts which Budach omitted would only have strengthened the showing of probable cause if they had been included. Budach could have mentioned that Koons was his cousin, that Koons had been convicted of marijuana possession in 1986, that

his trash also contained scorched foilies suggestive of methamphetamine use, and that the tip had come from Cindy Bahr's father. These facts would not have weakened the showing of probable cause if they had been included, and Koons has not cited any cases where similar types of omissions were held to violate the Fourth Amendment. Budach himself led the search, so this is not a case where an affiant obtained a warrant in bad faith but with the idea that others could execute it in good faith under the <u>Leon</u> exception. See <u>Leon</u>, 468 U.S. at 923 n.24.

Koons claims the issuing magistrate abandoned the role of a judge. That can happen if a magistrate fails to read a warrant application or affidavit, relies on an officer's oral testimony rather than the written affidavit, approves a warrant without specifics as to the objects of the search, fails to comply with legal formalities such as required signatures, or otherwise acts contrary to law. <u>United States v. Decker</u>, 956 F.2d 773, 777 (8th Cir. 1992). None of these circumstances exist in this case. The magistrate read the affidavit, asked Budach if he affirmed the truth and accuracy of its contents, and issued a facially valid warrant which specified its scope with particularity.

Under <u>Leon</u>, evidence obtained under the authority of a facially valid search warrant will not be suppressed if the executing officers acted in objective good faith on the magistrate's determination of probable cause, even if probable cause is later found to be lacking. 468 U.S. at 922. We do not need to reach the issue of probable cause here because we agree with the district court that both officers acted in objective good faith. Budach conducted an independent investigation and corroborated the informant's tip, he knew of additional indicia of probable cause even though he did not include them in his affidavit, the magistrate did not abandon his judicial role and issued a facially valid warrant, and neither officer's search exceeded the scope of the warrant. The totality of the circumstances shows that the <u>Leon</u> good faith exception applies and that the district court did not err by denying almost all of Koons' motion to suppress.

Koons contends that 21 U.S.C. § 860(a) is an unconstitutional exercise of congressional power under the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3. Section 860(a) provides that any person who violates § 841(a)(1) (drug trafficking) or § 856 (drug manufacturing) within 1,000 feet of a school or playground shall be subject to twice the maximum punishment authorized by § 841(b). 21 U.S.C. 860(a). Koons argues that § 860(a) is unconstitutional just like the statute which was struck down in United States v. Lopez, 514 U.S. 549 (1995) (statute prohibiting possession of a firearm within 1,000 feet of a school). Congress has expressly found that intrastate drug trafficking affects interstate commerce, 21 U.S.C. § 801(3)-(6), however, and this court has upheld the constitutionality of statutes which are supported by these findings. See, e.g., United States v. Patterson, 140 F.3d 767, 772 (8th Cir. 1998) (21 U.S.C. § 841(a)(1)); United States v. Brown, 72 F.3d 96, 97 (8th Cir.1995) (per curiam) (18 U.S.C. § 924(c)). We conclude that the enactment of § 860(a) also does not exceed congressional power under the Commerce Clause. We thus join the other courts of appeal which have upheld § 860(a) against Lopez challenges. United States v. Dixon, 132 F.3d 192, 202 (5th Cir. 1997); United States v. Jackson, 111 F.3d 101, 101-02 (11th Cir. 1997); United States v. Allen, 106 F.3d 695, 700-01 (6th Cir. 1997); United States v. Hawkins, 104 F.3d 437, 439-40 (D.C. Cir. 1997); United States v. Ekinci, 101 F.3d 838, 844 (2d Cir. 1996); United States v. McKinney, 98 F.3d 974, 976-80 (7th Cir. 1996); United States v. Orozco, 98 F.3d 105, 106-07 (3d Cir. 1996); United States v. Zorrilla, 93 F.3d 7, 8-9 (1st Cir. 1996).

Section 3553(f) provides that a safety valve reduction may be granted to an offender convicted under the following statutes: 21 U.S.C. §§ 841, 844, 846, 960 or 963. 18 U.S.C. § 3553(f). See also USSG § 5C1.2. A defendant may be sentenced below a statutory minimum sentence under § 3553(f) if five requirements are met, including full disclosure of information concerning the defendant's drug trafficking. 18 U.S.C. § 3553(f)(5). Koons argues that the district court erred in concluding that he was not eligible for such a reduction. The government responds that § 3553(f) does not by its terms apply to offenses under § 860, but that even if it did, Koons

failed to disclose all information concerning his drug activities. Congress specified particular offenses for which a § 3553(f) reduction may be considered, and § 860 is not listed as one of them. We conclude that such a reduction is not available as a matter of law to someone convicted under § 860. Other circuits agree. United States v. Kakatin, 214 F.3d 1049, 1052 (9th Cir. 2000); United States v. Anderson, 200 F.3d 1344, 1347 (11th Cir. 2000); United States v. McQuilkin, 78 F.3d 105, 108 (3d Cir. 1996). Koons attempts to argue against the clear text of the statute on the basis that he is the type of low level offender for whom the reduction was intended, but this argument is unconvincing.

Koons claims that the district court erred in concluding that it lacked authority to depart downward on the basis that his proximity to a public playground posed no added danger. He sought a departure under USSG § 5K2.0 for a combination of factors, including "lack of any real danger to children caused by (his) proximity." A conviction under § 860(a) does not require that the offense actually involve children or pose any real danger to children, however. "Nothing in the statute requires that school be in session or that children be near or around the school [or playground] at the time of the offense," Hohn, 8 F.3d at 1307, and a defendant need not know that he distributed drugs within the 1,000 foot zone to be convicted. United States v. Haynes, 881 F.2d 586, 590 (8th Cir. 1989). The district court did not err in concluding that it lacked authority under USSG § 5K2.0 to depart downward on this ground.[6]

---

[6] Koons does not argue that the district court had authority to depart downward under USSG § 5K2.11 for conduct that "may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." That is no doubt because such an argument would be unavailing in the circumstances of his offense conduct. Section 860 was passed to keep areas adjacent to schools and public playgrounds free of drugs and the dangerous incidents of drug trafficking. Possessing large amounts of methamphetamine with intent to distribute in such an area does not come within the § 5K2.11 policy statement. One of the two examples given in the guidelines to illustrate the type of conduct that might warrant a departure is a teacher

Finally, Koons argues that a discretionary downward departure was warranted by his twenty year record of continuous employment, the economic privation that his dependents will suffer, his minimal criminal history, and his willingness to cooperate. The district court acknowledged its authority to depart for mitigating circumstances under USSG § 5K2.0, but it found that no departure was warranted in this case. A district court's discretionary refusal to depart is not reviewable. United States v. Fellers, 285 F.3d 721, 726 (8th Cir. 2002). Moreover, the factors identified by Koons are not so special or unusual as to take his case out of the heartland. See Koon v. United States, 518 U.S. 81, 95 (1996).

For these reasons, we affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the district court erred when it denied Koons's motion to suppress because Budach's discovery of marijuana stems did not provide information sufficient to conclude that evidence of drug dealing would be found in Koons's residence. Moreover, because Budach failed to conduct a sufficient investigation to corroborate the tip, his reliance on the facially deficient warrant was not reasonable.

In this case, the informant's "tip," as presented in the affidavit, was not entitled to any weight. "When an affidavit contains information provided by a confidential informant, a key issue is whether that information is reliable." United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998) (citation omitted). "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is

possessing drugs in a § 860 zone "for display in a drug education program." Koons' offense conduct was entirely different.

-12-

corroborated by independent evidence." Id. (citations omitted). Here, Budach's affidavit failed to contain any information to suggest that the informant's tip was reliable. Budach's affidavit failed to indicate: (1) whether the informant was reliable; (2) how the informant obtained his information; (3) whether the informant provided any details to support his accusation; (4) the identity of the informant; or (5) the informant's relationship to the defendant. The informant's tip thus amounted to nothing more than an unsupported accusation.

The majority argues, however, that the presence of the stems corroborated the informant's assertion that Koons was dealing drugs, thereby giving the police probable cause to search his house. The majority fails to explain why the discovery of marijuana stems in an individual's trash suggests that they are "dealing" drugs. At most, the marijuana stems showed that someone possessed or smoked marijuana within Koons's residence within a few days prior to Budach's search. The stems alone, however, did not provide probable cause that Koons was dealing marijuana. Moreover, the presence of marijuana stems alone was not sufficient to provide probable cause that marijuana was present inside the house at the time of the search. See United States v. Elliot, 576 F. Supp. 1579, 1581 (S.D. Ohio 1979) (holding that the discovery of discarded marijuana waste amongst garbage, standing alone, is insufficient to support a determination of probable cause). In this respect, I agree with the reasoning of Elliot. Budach's affidavit:

> [D]oes not indicate a large quantity of discarded contraband which might indicate its continued presence in the house. Instead, all we can ascertain is that . . . [an unspecified number] of stems had left the home at some point in time.
>
> . . .
>
> Furthermore, the nature of the evidence is not such that its continued presence in the home is probable. To the contrary, this refuse is merely the waste product of past marijuana use. Moreover, it is unclear when that past use occurred, when the garbage was removed from the house

-13-

or even when it was scheduled to be picked up. Even assuming weekly garbage collection, the contraband may well have been evidence of marijuana use five days prior to the examination of the garbage. Without corroboration, we cannot say that this supports a conclusion of the probable presence of contraband on the day of the search. . . . The waste products of marijuana use do not, of themselves, indicate any continuing presence of [marijuana] in the home.

Id.

I also disagree with the district court's conclusion that the good faith exception applied to Budach's search because he held an objectively reasonable belief that there was probable cause to search Koons's home. In United States v. Leon, 468 U.S. 897, 922 (1984), the Supreme Court recognized an exception to the exclusionary rule in those cases where a police officer conducts a search "in objectively reasonable reliance on a subsequently invalidated search warrant." The Court outlined four situations in which an officer's reliance on a warrant would be unreasonable:

(1)     the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer;

(2)     the issuing judge abandoned his neutral judicial role;

(3)     the warrant was based on an affidavit with so few indicia of probable cause that an official belief in its validity would be unreasonable; and

(4)     the warrant itself was so facially deficient that the executing officers could not reasonably rely on its validity.

Id. at 923.

To assess the good faith of an officer executing a search warrant issued upon an affidavit he had prepared, a court must look at the totality of the circumstances.

-14-

See U.S. v. Chambers, 987 F.2d 1331, 1335 (8th Cir. 1993). Here, it may said that the underlying affidavit supporting the search was "so lacking in indicia of probable cause as to render official belief in [its] existence entirely unreasonable." Id. at 923. The affidavit was barren of information about the informant, and the tip itself was not corroborated by any evidence of drug dealing.

Moreover, Budach could not have been acting in good faith because he prepared the affidavit upon which the search was based, knowing that the information contained therein could have easily been corroborated further with some additional investigation. For example, Budach could have attempted to make a controlled substance purchase, conducted surveillance of Koons's residence, or conducted a subsequent trash pull to try to find evidence of drug dealing, such as baggies, scales, or ledgers. Budach could have also interviewed the informant to determine whether his tip was reliable. However, Budach did not do any of these things.

In sum, Budach should have known that the information contained within his affidavit was not sufficient to provide probable cause that Koons was dealing drugs. Budach failed to include any information to show that the informant's tip was reliable, and the marijuana stems merely suggested that someone in Koons's residence had smoked marijuana during the week or so prior to the search. Moreover, Budach obtained the warrant knowing that it was based upon tenuous evidence, when it would have been easy for him to sufficiently corroborate the informant's tip. Therefore, the issuance and the execution of this warrant was not supported by the "good faith" doctrine, and the results of the warranted search should be suppressed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-