NOT RECOMMENDED FOR PUBLICATION
File Name:  05a0288n.06
Filed:  April 18, 2005

No. 03-2473


UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

                                   ON APPEAL FROM THE UNITED
v.                              STATES DISTRICT COURT FOR THE
                                   EASTERN DISTRICT OF MICHIGAN
TODD LEVON,

      Defendant-Appellant.
_____/


BEFORE:    DAUGHTREY and CLAY, Circuit Judges; GRAHAM, District Judge.[*]

      CLAY, Circuit Judge.  Defendant Todd Levon appeals his conviction for conspiracy to

manufacture marijuana in violation of 21 U.S.C. § 846 and for being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g), alleging that he was not brought to trial within the time

allotted under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161(c).  Levon also appeals the 120

month sentence imposed by the district court.  For the reasons that follow, we **AFFIRM** Levon's

conviction under § 846, **REVERSE** his conviction under § 922(g), and **AFFIRM** his 120 month

sentence.

## I.    BACKGROUND

### A.    Procedural History

---

[*]The Honorable James L. Graham, United States District Judge for the Southern District of
Ohio, sitting by designation.

Defendant Todd Levon, his brother Bruce Levon, and Mark Isaacs were indicted by a grand jury on August 21, 2001 on multiple counts of conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 841 and 846. Bruce was additionally charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[1] All three co-defendants appeared before the district court on August 31, 2001. At that time, Bruce entered a plea of not guilty, however Levon and Isaacs did not enter pleas as they had not yet obtained counsel. Levon informed the court that he intended to secure the representation of attorney Robert Slemaka, who had already entered an appearance on Bruce's behalf. The court advised Levon that a potential conflict of interest could result from this arrangement, and continued Levon's arraignment for September 4, 2001. Attorney Slemaka did, in fact, represent Levon at his arraignment, at which time Levon pleaded not guilty. The court appointed counsel for Isaacs, who also pleaded not guilty on September 4, 2001.

On September 14, 2001, the district court issued an order scheduling a hearing concerning attorney Slemaka's joint representation of Levon and Bruce for September 17, 2001. No such hearing was held, however, as attorney Susanna Kostovski entered an appearance on Bruce's behalf on September 17, prior to the time scheduled for the hearing. On October 3, 2001, the district court held a status conference concerning all three co-defendants. On November 15, 2001, Isaacs filed a motion to suppress evidence, and on November 28, 2001, Bruce filed an additional motion to suppress and to join Isaacs' motion.

On May 22, 2002, the government filed a superseding indictment against all three co-defendants. The new indictment added a charge of felon in possession of a firearm under § 922(g)

---

[1]Throughout the opinion, we refer to Defendant as "Levon" and his brother as "Bruce."

against Levon. Bruce and Isaacs pleaded guilty to the charges in the superceding indictment on June 11, 2002, and the district court took their plea agreements under advisement. Attorney Slemaka withdrew as Levon's counsel on June 26, 2002, and on July 1, 2002, the district court appointed a federal defender to represent him.

On September 11, 2002, the government filed a motion requesting the district court to determine any excludable delay under the STA. Levon then moved to dismiss the case against him on September 23, 2002, arguing that more than seventy non-excludable days had passed from the time of his arraignment, in violation of the STA. The district court issued an opinion and order on October 30, 2002, concluding that the STA had not been violated because "at most" 69 days had elapsed. *United States v. Levon*, No. 01-80308, 2002 WL 31548623 at *5 (E.D. Mich. Oct. 30, 2002). Levon's jury trial finally commenced on January 7, 2003. The jury convicted him of conspiracy to manufacture 1,000 plants or more of marijuana, and of being a felon in possession of a firearm. After determining that the marijuana offense carried a ten-year mandatory minimum sentence, the district court sentenced Levon to 120 months imprisonment on each count, to run concurrently. Defendant timely appealed to this Court.

**B.      Substantive Facts**

**1.      Marijuana Cultivation**

From the early 1990s until approximately 2001, Levon and his brother Bruce grew marijuana out of various houses in the city of Detroit. Levon and Bruce each owned the houses individually and ran separate growing operations, but they would apparently assist each other from time to time by sharing growing equipment and "clones," or small cuttings from marijuana plants that can be

used to start a new crop, and by staggering their crops. A number of witnesses testified at Levon's trial that they worked for both brothers, doing jobs ranging from maintenance of houses to harvesting and trimming marijuana crops. These witnesses also testified that in return for their services, they were paid in cash and marijuana. Three individuals, Janet Shereda, Carl Snyder and co-defendant Isaacs, testified that at one time, each had lived in a house owned by Levon, and that during their residency they assisted in growing marijuana. A former drug customer and part-time dealer, Robert Persinger, testified that in addition to buying drugs from Levon, he saw extensive evidence of marijuana cultivation around Levon, including unharvested crops, garbage bags full of marijuana, and hydroponic growing equipment.

Persinger became a Drug Enforcement Agency ("DEA") informant in late 1999. Through information supplied by Persinger, in early 2000, the DEA began surveilling a house located at 12070 Longview Street in Detroit. The DEA executed a federal search warrant at the house on February 2, 2000. The search uncovered a marijuana growing operation in the basement, and Snyder, who had been living at the house, was arrested. However, neither Levon nor his brother was arrested following the raid on 12070 Longview.

On April 10, 2001, DEA agents raided a house owned by Bruce located at 3911 Nevada Street in Detroit. Again, the agents discovered a marijuana growing operation, and arrested the house's occupant, co-defendant Isaacs. In May 2001, DEA agents executed a search warrant at Bruce's home in Harrison Township, Michigan, uncovering drug paraphernalia, papers relating to marijuana cultivation techniques, and guns. Following the raids on 3911 Nevada and Bruce's home, Levon, Bruce, and Isaacs were indicted.

### 2. Firearms

One of the guns seized from Bruce's home was a Remington 12 gauge shotgun. At trial, the government introduced documentary evidence demonstrating that Levon purchased the gun in January 1994, and the parties stipulated: (1) that both Levon and Bruce were convicted of prior felonies; (2) that Levon's civil rights had not been restored as of January 5, 1994, such that he could legally purchase a firearm on that date; and (3) the Remington 12 gauge was manufactured outside of the State of Michigan. The district court instructed the jury that Levon could be convicted either on a theory that he actually possessed the Remington 12 gauge, or on the theory that he aided and abetted Bruce's illegal possession of the gun.

After trial and sentencing, the government discovered that Bruce's civil rights had been restored by May 2001, such that his possession of the Remington 12 gauge was not illegal at that time. Because Bruce's status as a felon in possession was a necessary predicate to finding Levon guilty on an aiding and abetting theory, and there was no evidence that Levon actually or constructively possessed the Remington 12 gauge when it was seized in May 2001, the government now concedes that Levon's conviction under § 922(g) should be reversed.

## II. DISCUSSION

### A. Speedy Trial Act

The STA issue in this case revolves around whether the district court properly excluded six days from the speedy trial clock: August 31-September 4, 2001, and September 17, 2001. The parties agree that all time from November 15, 2001 onward was properly excluded under the STA. The district court found a total of 69 non-excludable days between August 31 and November 14,

2001. We review the court's legal conclusions *de novo* and its factual determinations for clear error. *United States v. DeJohn*, 368 F.3d 533, 538 (6th Cir. 2004).

Section 3161(c)(1) provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). Where an indictment charges multiple defendants and the district court has not granted severance, a single STA clock governs the action. *United States v. Culpepper*, 898 F.2d 65, 66 (6th Cir. 1990). It is incumbent upon the defendant to file a motion to dismiss for STA violations prior to the start of trial; failure to do so renders the defendant's STA claim waived on appeal. *See* 18 U.S.C. § 3162(a)(2); *United States v. Crossley*, 224 F.3d 847, 860 (6th Cir. 2000). If the district court fails to bring a defendant to trial within seventy days, the indictment "shall be dismissed on motion of the defendant," either with or without prejudice. 18 U.S.C. § 3162(a)(2). However, the statute delineates a number of situations in which the district court may exclude time from the seventy day calculation, effectively tolling the STA clock. Relevant in the instant case is § 3161(h)(1)(F), which excludes "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion."

    **1.    August 31, 2001 to September 4, 2001**

6

Levon first argues that the district court erred in finding that the STA clock began to run on September 4, 2001, the date he pleaded not guilty, as opposed to August 31, 2001, the date he first appeared before the court. However, Levon failed to argue before the district court that the STA clock began to run prior to September 4, and therefore, we agree with the government that he waived the issue and cannot raise it on appeal. The district court's opinion and order on the STA issue notes that "as confirmed at the hearing, *Defendant does not argue that any time before September 4, 2001 counts under the STA*." *Levon*, 2002 WL 31548623 at *2 (emphasis added). It is apparent from this language in the district court's opinion that Levon did not merely fail to raise time before September 4, he affirmatively confirmed for the court that he was not arguing the STA clock started running prior to September 4. This amounts to the "intentional relinquishment or abandonment of a known right," and therefore constitutes a clear waiver. *See United States v. Olano*, 507 U.S. 725, 733 (1993).[2]

Furthermore, even if Levon had properly preserved an argument regarding August 31-September 4, we would be bound to reject his claim on the merits. We have previously held that "[t]he plain meaning of the language of the STA requires a not guilty plea to begin the clock running." *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998) (citing 18 U.S.C. §

---

[2]Levon unconvincingly argues that notwithstanding his express confirmation to the district court that the clock began to run on September 4, the government preserved the running date of the clock for appeal. Levon points to the government's STA brief to the district court, in which it listed as "Defendant's initial appearance" the period between August 21, 2001, the date of the indictment, and September 4, 2001, and argued that the entire period was excludable. However, the government never explicitly argued that the clock began to run on August 21, and in making a motion for dismissal under the STA, Levon had the burden of proof. Because Levon conceded that the clock began to run on September 4, we find his argument regarding the government's district court brief to be totally without merit.

3161(c)(1)). Defendant did not enter a not guilty plea until September 4, because he was not yet represented by counsel at his first appearance on August 31. Because "the statute expressly applies only to cases in which pleas of not guilty have been entered," the date on which the defendant pleaded not guilty, rather than the initial appearance without counsel, "started the Speedy Trial Act clock in this case." *United States v. Nixon*, 779 F.2d 126, 130 (2d Cir. 1985) (cited in *O'Dell*, 154 F.3d at 361); *see also United States v. O'Bryant*, 775 F.2d 1528, 1531 (11th Cir. 1985) (holding that STA clock did not begin to run until defendant appeared before district court with counsel and entered not guilty plea, despite having initially appeared before court several days earlier); *cf. United States v. Tootle*, 65 F.3d 381, 383 (4th Cir. 1995) (holding that because plain language of the STA requires a not guilty plea, STA was not triggered in case where the defendant never entered a not guilty plea); *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) (STA clock begins to run with indictment or arraignment, whichever comes last). Therefore, even if Levon did not waive the argument, the STA clock did not begin to run until he pled not guilty on September 4, 2001.

### 2.     September 17, 2001

The district court excluded September 17, 2001 as an "other proceeding concerning the defendant" under § 3161(h)(1), because a hearing on the potential conflict of interest in Slemaka's joint representation of Levon and Bruce was scheduled for that date. However, the problem was resolved before the hearing occurred, and thus, no hearing was held. Levon argues that because the hearing was not actually held, September 17 cannot be excluded. In rebuttal, the government argues, as it did before the district court, that the entire time from September 14, when the court issued an

order setting the hearing date, through September 17, when the matter was resolved, should be excluded.

We agree with the government that September 14-17 is excludable under the STA. *United States v. Dunbar*, 357 F.3d 582 (6th Cir. 2004),[3] which was decided after the district court issued its STA opinion in this case, involved a situation in which the district court learned of a potential conflict of interest between the defendant and his attorney during a March 14 hearing. The defendant failed to request appointed counsel on that date, or at subsequent hearings on May 14 and 15. Finally, on May 16, two months after the initial conflict was brought to the court's attention, the government filed a motion to resolve the issue, which was actually resolved a week later when defense counsel withdrew. *Id.* at 593. This Court stated that "[a]lthough no formal motion was made before or at the March 14, 2001 appearance, we hold that March 14, 2001 through May 15, 2001 may be excluded under 3161(h)(1) as 'other proceedings concerning the defendant.'" *Id.* The Court also excluded the entire period between the government's motion on the conflict issue and the granting of defense counsel's motion to withdraw, because where a motion requires a hearing, "§ 3161(h)(1) provides for the automatic exclusion of 'the entire period between the filing of the motion and the conclusion of the hearing' on that motion." *Id.* (quoting *Henderson v. United States*, 476 U.S. 321, 329 (1986)).

---

[3]The Supreme Court recently granted certiorari and issued a brief order vacating the judgment and remanding *Dunbar* back to this Court for reconsideration in light of *United States v. Booker*, 125 S. Ct. 738 (2005). *See Dunbar v. United States*, 125 S. Ct. 1029 (2005). Presumably, however, the STA issues in the case will not be reconsidered.

While *Dunbar* is not completely analogous to the present case, we read it to stand for the proposition that time may be excluded under the STA, in appropriate circumstances, notwithstanding the lack of a formal motion on the issue. In this case, although neither party made a formal motion regarding Slemaka's joint representation of Levon and his brother, the district court was clearly concerned, *sua sponte* ordering a hearing on the issue. Clearly, had either party made a motion concerning Slemaka's representation, the time between the filing of the motion and the hearing would have been excluded under § 3161(h)(1)(F). *See*, *e.g.*, *Henderson*, 476 U.S. at 329; *Dunbar*, 357 F.3d at 593. Essentially, on September 14, the district court made its own motion on the potential conflict. The fact that the court ordered the hearing *sua sponte*, as opposed to the hearing being held on the motion of one of the parties, should not change the result under the STA. *See United States v. Polan*, 970 F.2d 1280, 1285 (3d Cir. 1992); *cf. United States v. Hohn*, 8 F.3d 1301, 1304 (8th Cir. 1993) (excludable delay allowed under § 3161(h)(1)(F) where pretrial services filed petition, because petition by third-party is the "functional equivalent" of a motion made by a party).[4]

In light of *Dunbar*, we find that the district court's order setting a hearing on the joint representation issue should be treated as if it were a motion by one of the parties. Because the 'motion' required a hearing, under § 3161(h)(1)(F) the entire time from the filing of the motion

---

[4]In addition, we note that § 3161(h)(1)(F) excludes delay resulting from "any pretrial motion" without reference to the filer of the motion, and other circuits have found that "[m]otions excludable under subsection (F) includes *any pretrial motion* and are not limited to those motions enumerated in Federal Rule Criminal Procedure 12(b)(2)." *Hohn*, 8 F.3d at 1305 (citing *United States v. Wilson*, 835 F.2d 1440, 1443 (D.C. Cir. 1987) (emphasis in original). This further suggests to us that the lack of a formal motion by one of the parties does not preclude delay from being excludable under § 3161(h)(1)(F).

through the hearing should be excluded, *i.e.*, September 14 thorough September 17. Further, the fact that the hearing was not actually held is inconsequential, because § 3161(h)(1)(F) excludes delay "from the filing of the motion through the conclusion of the hearing on, *or other prompt disposition of*, such motion." (emphasis added). Under the plain terms of subsection (F), September 17 is excludable as the date on which the 'motion' was promptly disposed of. Therefore, we hold that September 14, 2001 thorough September 17, 2001 is excludable under the STA.

### 3.    The Final STA Calculation

Starting the STA clock on September 4, 2001,[5] and excluding September 14, 15, 16 and 17, as well as October 3, which the parties agree should be excluded, we count a total of sixty-six non-excludable days from the entry of Levon's not guilty plea to the commencement of his trial. Thus, we hold that there was no STA violation.

### B.    Firearm Possession

Levon argues, and the government concedes, that his conviction under § 922(g) should be reversed. The conviction was predicated on Bruce's status as a felon in possession, and it is now clear that Bruce was legally entitled to possess a firearm when his house was raided in May 2001. Accordingly, we reverse Levon's conviction for being a felon in possession of a firearm under § 922(g).

### C.    Sentencing

---

[5]It is undisputed that September 4, the date of Levon's arraignment, is itself properly excludable under § 3161(h)(1)(F).

11

Levon was convicted of conspiracy to manufacture marijuana under 21 U.S.C. § 846, which states that the penalty for violating the statute is the same "as those proscribed for the offense, the commission of which is the object of the attempt or conspiracy." The relevant substantive statutory offense for Levon's conduct is 21 U.S.C. § 841, which prescribes a ten-year mandatory minimum sentence if the defendant has a prior felony drug conviction. 21 U.S.C. § 841(b)(1)(B)(vii). It is undisputed that Levon was previously convicted in Michigan state court in 1979 of delivery of PCP, and in 1990 of possession with intent to deliver marijuana, both of which qualify as prior felony drug convictions under § 841(b)(1)(B)(vii). Thus, the 120 month sentence imposed by the district court was the minimum sentence allowed under the relevant statute.

Levon argues on appeal that his prior convictions needed to be proved to a jury beyond a reasonable doubt. However, he concedes that in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court held that prior convictions need not be proved to a jury beyond a reasonable doubt. Levon also concedes that *Booker* does not overrule *Almendarez-Torres*, because it excludes prior convictions from the facts which must be proved to a jury. *Booker*, 125 S. Ct. at 756. Further, although Levon does not raise it, the Supreme Court's post-*Booker* decision in *Shepard v. United States*, 125 S. Ct. 1254 (2005), which addresses the use of prior convictions to sentence a defendant under the Armed Career Criminal Act, is not implicated here as it is undisputed that Levon has two qualifying prior felony drug convictions. Finally, we note that there are no unresolved *Booker* issues in this case, because the indictment alleged that Levon conspired to manufacture 1,000 or more plants or marijuana, the jury convicted him of that amount, and he received the statutorily mandated minimum sentence of ten years, which applies to 100 or more

marijuana plants. Levon's Sixth Amendment rights were not violated, and he could not have received a lower sentence for his crime of conviction than the sentence he did, in fact, receive; therefore, we affirm Levon's 120 month sentence.

### III.   CONCLUSION

For the above reasons, we **AFFIRM** Levon's conviction for conspiracy to manufacture marijuana under 21 U.S.C. § 846 and his 120 month sentence. However, we **REVERSE** Levon's conviction under 18 U.S.C. § 922(g), and **REMAND** to the district court with instructions to enter judgment dismissing the firearm count.