Brad L. GILLIG, Plaintiff–Appellant,

v.

ADVANCED CARDIOVASCULAR
SYSTEMS, INC., Defendant–
Appellee.

No. 94–3358.

United States Court of Appeals,
Sixth Circuit.

Submitted May 19, 1995.

Decided Oct. 23, 1995.

Alan S. Belkin, Shapiro, Turoff, Gisser, & Belkin, Cleveland, OH (briefed), for Plaintiff-Appellant.

Marc L. Swartzbaugh, John W. Edwards, II (briefed), Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendant-Appellee.

Before: MILBURN and SILER, Circuit Judges; and COOK,* Chief District Judge.

COOK, Chief District Judge.

Brad L. Gillig appeals the dismissal by the district court of his lawsuit against Advanced Cardiovascular Systems, Inc. (Advanced) for the wrongful termination of his employment. The issues on appeal are (1) whether Chief Judge Thomas Lambros had the authority to reconsider a decision that had been issued by the judge to whom the case was originally assigned prior to an administrative transfer of the case and (2) whether *Greeley v. Miami Valley Maintenance Contractors,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), is retroactive or applicable in the absence of a statute which prohibits his termination as an employee. For the reasons that have been set forth below, we affirm the decision of the district court.

I.

On September 25, 1989, Gillig, an employee-at-will at Advanced, met with his supervisor, Christopher Thompkins, who informed him that his service with the company as a

---

* The Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

sales person was being terminated. Thompkins also told Gillig that he would receive a severance pay in the amount of $30,000, as well as some other fringe benefits, if he signed an agreement which would release Advanced from any and all claims arising from his employment with the company.[1] Immediately after the conference, Gillig contacted an attorney who advised him that employers were accorded wide latitude in discharging employees-at-will under Ohio law.

At a subsequent meeting between the parties on September 29, 1989, Gillig was presented with a proposed release agreement for his consideration and execution.[2] On two occasions during this meeting, Gillig telephonically contacted his attorney who declined to give him any specific legal advice without having an opportunity to examine the content of the proposed release agreement. Nevertheless, Gillig signed the release.

## II.

On May 3, 1990, Gillig filed a lawsuit against Advanced in the Summit County Court of Common Pleas of Ohio. The lawsuit was subsequently removed to the United States District Court for the Northern District of Ohio on the basis of its diversity jurisdiction. In his lawsuit, Gillig alleged that his employment had been terminated because he had refused to commit an illegal act for the company in violation of Ohio public policy.[3] Gillig also asserted that the release did not bar him from pursuing his claim against Advanced because (1) he was not fully aware of his legal rights as a discharged employee under Ohio law when the document was signed, and (2) a release under California law, CAL. CODE § 1542 (Section 1542), did not extend to unknown or unsus-

pected claims which, if known or suspected, would materially affect the settlement terms.

Shortly after the removal of the case to the federal court and prior to the completion of discovery, Advanced filed a motion for summary judgment, in which it maintained that the release barred Gillig's claims against the company. On January 1, 1992, the original trial judge denied Advanced's motion, holding that the "mere recital ... that the protection of Civil Code Section 1542 is waived, or that the release covers unknown claims ... [was] not controlling." Order at 5. He further held that the issue of "whether the releaser intended to discharge such claims or parties [was] ultimately a question of fact," and that, at that stage of the proceedings, there were questions of fact "as to Gillig's knowledge at the time he executed the Release." *Id.*

On April 26, 1993, at the conclusion of discovery, Advanced filed a second motion for summary judgment. However, prior to a resolution of the motion, the case was transferred to Chief Judge Lambros for administrative reasons. During a hearing on October 26, 1993, Advanced asked Chief Judge Lambros to reconsider the Order of January 1, 1992, in which Advanced's first motion for summary judgment had been denied.

On March 7, 1994, Chief Judge Lambros agreed with Advanced's arguments and, thereby, granted its motions for reconsideration and summary judgment. With regard to the reconsideration issue, he relied upon *Winet v. Price*, 4 Cal.App.4th 1159, 6 Cal. Rptr.2d 554 (1992), which was decided subsequent to the entry of the January 1, 1992 Order. In *Winet*, the California Court of Appeals interpreted Section 1542 as holding that only the outward expression of the parties was indicative of the releaser's state of

---

1. Advanced claims that Gillig's decision to resign immediately in exchange of a severance package was voluntary, contending that, as an alternative proposal, he had been offered a six-month probationary period of employment. However, this argument, as well as the issues that have been raised thereunder, are immaterial to the questions before the Court.

2. Both parties agree that, although their employment relationship is governed by the laws of

Ohio, the release agreement is governed by the laws of California.

3. Specifically, he claims that the sales manager told the sales staff during a national sales meeting to clandestinely remove old products from the inventories of their customers in order to obtain new orders from them. Gillig asserts that he was terminated because of his expressed opposition to the sales manager's proposal.

mind.[4] Based upon the rationale of *Winet,* Chief Judge Lambros rejected Gillig's attempt to establish his state of mind at the time of the execution of the release. He determined that the release unambiguously reflected Gillig's objective intention to waive "all claims which are related to the employment relationship ... notwithstanding § 1542." Order at 9.

Next, Chief Judge Lambros considered Advanced's second motion for summary judgment, in which the company alleged that it was entitled to terminate Gillig for any cause under the doctrine of employment-at-will. In his defense, Gillig relied upon *Greeley v. Miami Valley Maintenance Contractors,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), a case which, he contended, provided him with an exception to the employment-at-will doctrine. Chief Judge Lambros disagreed, holding that the *Greeley* exception to the employment-at-will doctrine was confined to those situations in which the dismissal of the employee was in violation of a statute. Noting that Gillig had failed to advance any statute that had been violated by Advanced, Chief Judge Lambros determined that *Greeley* was inapplicable to the issues in controversy. Moreover, he added that *Greeley* could not serve as a basis for Gillig's claims because the case, having been decided by the Ohio appellate court subsequent to the execution of the challenged release agreement, did not have any retroactive effect.

On appeal, Gillig challenges Chief Judge Lambros' authority to reconsider the preclusive effect of the release at issue, as well as his interpretation of the scope and retroactive effect of *Greeley.* Significantly, Gillig does not contest the substantive merits of the decision which relate to the preclusive effect of the release, but only to the authority of Chief Judge Lambros to entertain the issue.

### III.

Gillig argues that the doctrine of the law of the case precludes a judge from the same court from reconsidering an issue that has been decided by another judge prior to an administrative transfer of the case unless there are clear and convincing reasons to believe that the original decision was erroneous. His exposition of the doctrine of the law of the case is excessively rigid.

Legal scholars have discussed the doctrine of the law of the case extensively:

> The law of the case, like stare decisis, deals with the circumstances that permit reconsideration of issues of law. The difference is that while stare decisis is concerned with the effect of a final judgment as establishing a legal principle that is binding as a precedent in other pending and future cases, the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages.... Like stare decisis, the doctrine of the law of the case is quite rigidly applied to force obedience of an inferior court, but more flexibly in its application to reconsideration by the courts that made the earlier decision.

1b JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.401 (2d ed.1994).

> At the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time.

*Id.* at ¶ 0.404; *see also id.* at ¶ 0.404.[1].

While the doctrine of the law of the case does not preclude the reconsideration of prejudgment orders, it does cast an air of caution on such an exercise by a judicial officer:

> It would be utterly destructive ... if each successive decision resulted in the reconsideration of every previous one, and a sequence of decisions in the same case based on different views of overlapping

**4.** *Winet* stated in pertinent part as follows:
Our objective in construction of the language used in the contract is to determine and to effectuate the intention of the parties. It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce.
*Winet,* 4 Cal.App.4th at 1166, 6 Cal.Rptr.2d 554 (citations omitted). Chief Judge Lambros' interpretation of *Winet* has not been appealed.

issues of law would likely result in an internally inconsistent judgment. To avoid the horns of this dilemma, it is the practice to treat each successive decision as establishing the law of the case and depart from it only for convincing reasons.

MOORE, et al., *supra*, at ¶ 0.404[4.–1]. Thus, when a case is transferred from one judge to another, it is important that the transferee judge does not hastily disturb the rulings of the transferor judge, inasmuch as "[t]he utility of such a transfer would be seriously compromised if the fact of transfer were to be treated as an invitation to seek a "second opinion" on every pre-transfer ruling...." *Id.* at ¶ 0.404[4.–2]. Nevertheless, "[t]here is no jurisdictional inhibition to reconsideration ... and a trial judge should not court reversal because of the erroneous ruling of another judge any more than because of an erroneous ruling of his own." *Id.*

 In summary, "[t]he pre-transfer rulings constitute the law of the case and should not be lightly disturbed." *Id.*; *see also In re United States Steel Corp.*, 479 F.2d 489 (6th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973) (same). However, pre-transfer orders "should not be treated as a special breed." MOORE, ET AL., *supra*, at ¶ 0.404[4.–2]. Indeed, "transfer should no more freeze prior rulings than it should require their routine reexamination." *Id.* Accordingly, judges should have, and do have, the discretion to determine when to reconsider pre-transfer orders in light of the interests that have been advanced by the doctrine of the law of the case. Therefore, decisions to reconsider these orders are reviewable only on the basis of an abuse of discretion. *See United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990):

> The doctrine of the law of the case, therefore, does not foreclose a court from reconsidering issues in a case previously decided by the same court or another court. Applied to coordinate courts, the doctrine is a discretionary tool available to a court in order to promote judicial efficiency. As

such, a decision to reconsider a previously decided issue will be deemed erroneous only if it is shown that the transferee court abused its discretion.

> We note that other courts have limited a court's discretion to revisit issues previously decided by another court. We do not think that such limitations are warranted. It is within the sole discretion of the court to determine if a prior ruling should be reconsidered. Thus, we decline to impose any conditions or limitations upon a court's power to review a prior ruling of another court.

*Id.* (citations omitted); *see also Thompson v. Sawyer*, 678 F.2d 257, 268–69 (D.C.Cir.1982) (same holding).

 In the instant case, the record is devoid of any evidence that Chief Judge Lambros abused his discretion when he granted Advanced's motion for reconsideration. There is simply no evidence to suggest that his review of the preclusive effect of the release at issue was part of a "routine reexamination" of the pre-transfer orders or was lightly undertaken by him.[5] Accordingly, he did have the authority to reconsider the decision of the original trial judge. Hence, his judgment will not be reversed on this basis.

Having concluded that Chief Judge Lambros did not commit reversible error by reconsidering the challenged Order which pertained to the preclusive effect of the release at issue, we do not reach the issue of the scope or retroactive effect of *Greeley*, inasmuch as his disposition of the case rests upon other unchallenged dispositive grounds; to wit, *Winet*, which precludes Gillig from pursuing this action due to the unambiguous release that he signed. *See supra* pp. 588–89; *see also Harris v. City of Akron*, 20 F.3d 1396, 1397 (6th Cir.1994), *cert. denied*, ── U.S. ──, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994) (summary judgment can be affirmed if supported by grounds upon which district court relied or by applicable law).

---

5. The record also reveals that directly applicable case law had developed subsequent to the decision by the original trial judge. Inasmuch as intervening state court decisions often warrant a review of issues of state law, reconsideration was

warranted on that basis. *See, e.g., Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941); *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 477–78 (10th Cir.1990).

## IV.

Based on the foregoing, the judgment of the district court is affirmed.