RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0041P (6th Cir.)
File Name: 04a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

DAMON DUNBAR,
    *Defendant-Appellant.*

No. 02-1766

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80778—Denise Page Hood, District Judge.

Argued: October 30, 2003

Decided and Filed: February 9, 2004

Before: MOORE and ROGERS, Circuit Judges;
FORESTER, Chief District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Suzanna Kostovski, Detroit, Michigan, for Appellant. Wayne F. Pratt, ASSISTANT UNITED STATES

———————————

[*] The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Suzanna Kostovski, Detroit, Michigan, for Appellant. Wayne F. Pratt, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant, Damon Dunbar ("Dunbar"), appeals his conviction and sentence. Dunbar was convicted by jury of one count of distribution of cocaine base and two counts of distribution of heroin. The district court sentenced Dunbar to three concurrent 151-month terms of imprisonment. Dunbar raises two arguments on appeal. First, Dunbar argues that his conviction should be vacated and his indictment dismissed because the delay between his indictment and his trial violated the Speedy Trial Act. Second, if his conviction is upheld, Dunbar argues that his sentence should be vacated because the district court erred by including fifty-six grams of cocaine base in the calculation of his sentence based upon evidence that was not sufficiently reliable.

For the following reasons, we **AFFIRM** Dunbar's conviction and sentence.

## I. BACKGROUND

### A. Offense Conduct

An investigation by a task force comprised of federal, state, and local law enforcement officers led to Dunbar's arrest. The task force received a tip from a confidential informant ("CI") that Dunbar was engaging in illegal drug activity, which led the task force to investigate Dunbar's drug transactions. During the investigation, undercover agents made three controlled purchases. On May 19, 1999, Dunbar

sold 12.1 grams of crack cocaine to an undercover DEA agent. At trial, the government produced evidence that Dunbar possessed additional crack cocaine during this transaction, and that a conservative estimate of this additional crack cocaine was two ounces. On June 8, 1999, Dunbar sold 1.1 grams of heroin to an undercover police officer. Then, on June 15, 1999, Dunbar sold twelve grams of heroin to an undercover police officer. Dunbar was arrested on November 3, 2000.

**B. Speedy Trial Act Background**

On October 26, 2000, a one-count criminal complaint was sworn in the Eastern District of Michigan, charging Dunbar with distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). The criminal complaint states that the offense occurred on or about June 15, 1999, and charges Dunbar for his conduct during the third controlled buy. On November 3, 2000, the complaint was unsealed, and Dunbar appeared before a magistrate judge; the magistrate judge denied Dunbar bond and ordered him detained. On November 9, 2000, a three-count indictment was returned against Dunbar in the Eastern District of Michigan. Count One of the indictment charges Dunbar with distribution of five grams or more of a mixture or substance containing cocaine base (crack cocaine) on or about May 19, 1999, in violation of § 841(a)(1), (b)(1)(B)(ii), and (b)(1)(B)(iii). Counts Two and Three of the indictment charge Dunbar with distribution of heroin, in violation of § 841(a)(1) and (b)(1)(C), on or about June 8, 1999, and on or about June 15, 1999, respectively.

On November 13, 2000, Dunbar made his initial appearance on the charges contained in the indictment and entered a plea of not guilty. Dunbar remained in detention following his plea. After Dunbar was arraigned, his retained counsel, Charles D. Lusby ("Lusby"), and the government signed an undated proposed order for a continuance, stipulating that a period from November 13, 2000 to January 5, 2001 would be excludable delay for purposes of the Speedy

Trial Act. The proposed order indicates that the parties agreed to use this period to prepare pretrial motions and to prepare for trial, and it also indicates that the defendant was going to use this period to decide whether to plead guilty. The proposed order states that the parties stipulated that the ends-of-justice within the meaning of 18 U.S.C. § 3161(h)(8) would be served by the continuance due to the complexity of the case. As a result of clerical error by the parties, this order was never presented to the district court.

On November 30, 2000, a magistrate judge held a pretrial conference and entered a summary order, noting that the parties stipulated to extend the time for filing motions until January 5, 2001. This summary order was approved by the district judge.

Although it is not reflected at all on the district court's docket sheet, the parties agree that they appeared before a magistrate judge on March 14, 2001, regarding a potential conflict of interest issue involving Dunbar's retained counsel, Lusby. The potential conflict of interest issue arose during pretrial discussions between the government and Lusby about the possibility of a plea agreement. The government's plea offer was contingent upon the defendant providing "substantial assistance" in the form of information regarding other individuals. During these discussions, Lusby indicated that he might have a potential conflict of interest between Dunbar and his other clients, who might be the subject of Dunbar's assistance. The government and Lusby agreed that Dunbar should consider requesting appointed counsel for the purpose of advising Dunbar about the potential conflict of interest issue. In an appearance before a magistrate judge, on May 14, 2001, Dunbar requested more time to confer with Lusby before requesting appointed counsel. In another appearance before the magistrate judge, on May 15, 2001, Dunbar again failed to request appointed counsel, and the matter was adjourned so that the government could file a motion to resolve the potential conflict of interest issue. The government filed its motion on May 16, 2001. On May 22,

2001, Lusby filed a response to the government's motion to resolve the potential conflict of interest issue and also filed a motion to withdraw as Dunbar's counsel. On May 24, 2001, the district court granted Lusby's motion to withdraw as defense counsel; on May 25, 2001, the district court appointed the Federal Defender's Office to represent Dunbar, which mooted the government's motion to resolve the conflict of interest issue. Eventually, Timothy Murphy ("Murphy") was appointed by the Federal Defender's Office as Lusby's replacement.

On May 24, 2001, Dunbar personally made a motion to review his detention. On May 30, 2001, the district court held a hearing on Dunbar's motion to review his detention and also considered whether Dunbar's right to release under § 3164 of the Speedy Trial Act had been violated because Dunbar had been detained for more than ninety days and the docket sheet did not reflect any periods of excludable delay. The district court was unable to resolve the motion on May 30, 2001 and scheduled another hearing for June 4, 2001.

The dialogue between the parties and the court during the June 4, 2001 hearing is important because Dunbar's ability to obtain a dismissal of the indictment for a violation of his rights under § 3161 of Speedy Trial Act depends upon whether he made a motion to dismiss the indictment for violation of the seventy-day rule. At the outset, the parties and the court considered the purposes of the June 4, 2001 hearing to be determining whether § 3164 had been violated because Dunbar had been detained for more than ninety days and reviewing Dunbar's detention. After discussing whether Dunbar should be released pursuant to the ninety-day rule for § 3164, Dunbar's counsel raised the issue of whether the indictment should be dismissed pursuant to the seventy-day rule for § 3161. The following exchange took place between Dunbar's counsel and the Court:

MR. MURPHY [Dunbar's counsel]:  There is an additional issue,

though, and that is the speedy trial.

THE COURT:     Okay.

MR. MURPHY: Because we have 79 days of nonexcludable delay by my computation.

THE COURT:     Well, I think we're at, on the speedy trial clock, of 84 days.

MR. MURPHY: Well, I have 79, but that was I don't know since when. But, we have over 70, that's the issue.

And that, of course, gives rise to — well, under those circumstances, *I would move to dismiss.*

Now, I've advised Mr. Dunbar that the Government is very well — that the Court has discretion to dismiss with or without prejudice. Under these circumstances, I would make no prediction, but I would certainly share my opinions with Mr. Dunbar about which was more likely. And that if the Court chose to dismiss without prejudice, the Government would likely seek a delay to reindict *so that would be an exercise in futility.*

*We haven't fully discussed that issue.*

THE COURT:     Okay.

J.A. at 65 (emphases added). The court then discussed whether various periods constituted excludable delay pursuant

§ 3161(h) of the Speedy Trial Act. J.A. at 70-79. The court found that up to that point, only eighty-four days of non-excludable delay had passed, therefore, the ninety-day pretrial detention rule of § 3164 had not been violated.

In reaching its conclusion that only eighty-four days of non-excludable delay had passed, the district court determined that the Speedy Trial clock began to run on November 9, 2000, the day that Dunbar was indicted, but that November 9, 2000 was excludable. The district court found that three non-excludable days had passed from November 10, 2000 through November 12, 2000. The district court then concluded that November 13, 2000, the day Dunbar was arraigned, was excludable. The district court excluded a thirty-day period in January and February 2001 for plea negotiations. The district court then concluded that March 14, 2001 through May 24, 2001 was excludable due to the potential conflict of interest issue. The district stopped counting the days as of May 24, 2001, but we note that the period between May 25, 2001 and June 4, 2001 should have been considered excludable delay pursuant to § 3161(h)(1)(F) because Dunbar made an oral motion to review his bond at the May 24, 2001 hearing and the motion was not disposed of until June 4, 2001.[1]

After making its findings regarding excludable delay, the district court made the following oral ruling:

THE COURT:    And therefore, Section 3164 has not
              been violated. At least the Court finds it

---

[1]It is not clear whether the district court found additional days excludable, beyond those it explicitly mentioned during its findings immediately preceding its oral ruling. By our calculations, subtracting the days the district court explicitly found excludable, more than ninety days passed between Dunbar's indictment and the June 4, 2001 hearing. However, because the district court released Dunbar on bond, and because on appeal we find additional days excludable, this calculation error was harmless.

has not been violated to date, meaning that the Defendant has not been detained solely because he is awaiting trial in violation of 18 USC Section 3164(a).

. . .

And so, *if you are making a motion to dismiss based on the speedy trial clock having run, that's denied.* Your motion for an evidentiary hearing is also at this time denied without prejudice.

J.A. at 78-79. Following the June 4, 2001 hearing, the district court issued a written order, dated June 8, 2001, recording its previous rulings on Dunbar's oral motions. The order provides in pertinent part:

IT IS ORDERED that [Dunbar's] oral Motion for Release on Bond pursuant to 18 U.S.C. § 3164 is DENIED, the Court finding that § 3164 has not been violated as more fully set forth on the record.

IT IS FURTHER ORDERED that [Dunbar's] oral Motion to Dismiss for a violation of the Speedy Trial Act is DENIED.

Docket No. 32. At the June 4, 2001 hearing and again in its June 8, 2001 written order, the district court also denied Dunbar's motion for an evidentiary hearing. Nevertheless, at the June 4, 2001 hearing, the district court ordered Dunbar released pursuant to a $10,000 unsecured bond.

Following several adjournments and continuances, voir dire for Dunbar's trial began on November 1, 2001. On November 6, 2001, the jury found Dunbar guilty of all three counts of the indictment. On June 6, 2002, the district court sentenced Dunbar to three concurrent terms of 151 months of imprisonment; concurrent terms of eight years of supervised

release on Count One, six years of supervised release on Count Two, and six years of supervised release on Count Three.

On March 1, 2002, defense counsel made a motion for reconsideration of Dunbar's oral motion to dismiss his indictment due to violation of § 3161 of the Speedy Trial Act. At a hearing on Dunbar's motion for reconsideration, on March 21, 2002, the district judge re-analyzed the period between Dunbar's indictment and the commencement of his trial. The district court again concluded that the Speedy Trial clock began to run on November 9, 2000, the day Dunbar was indicted, but that November 9, 2000 was excludable. The district court found that three non-excludable days had passed from November 10, 2000 through November 12, 2000. The district court again concluded that November 13, 2000, the day Dunbar was arraigned, was excludable. At this hearing, the district court found an additional fifty-three days were excludable due to the proposed order signed by the parties. The district court found that fifteen non-excludable days had passed from January 6, 2001 through January 20, 2001. The district court found that the parties had engaged in plea negotiations from January 21, 2001 through February 19, 2001, and thus these thirty days were excludable. The district court noted that some of the time between February 20, 2001 and March 14, 2001 could potentially be excludable, but that due to its other calculations, it was not necessary for it to make this determination in order to deny Dunbar's motion. The district court then found that March 14, 2001 through May 24, 2001 was excludable due to the potential conflict of interest issue. The district court also found that all of the time from May 24, 2001 through November 1, 2001 was excludable due to the pendency of Dunbar's motion to review his detention, continuances and adjournments that Dunbar either requested or consented to, and an adjournment from August 6, 2001 through September 26, 2001 due to the unavailability of an attorney and a witness. Finally, the district court concluded that the Speedy Trial clock stopped

on November 1, 2001, with the commencement of voir dire. *See* J.A. at 357-65.

Based upon the foregoing analysis, the district court calculated that only forty non-excludable days passed between Dunbar's indictment and the commencement of his trial. The court then explicitly ruled that there was no violation of the seventy-day rule of § 3161. On March 23, 2002, the district court entered an order denying Dunbar's motion for reconsideration.

On June 11, 2002, Dunbar timely appealed his jury conviction of November 6, 2001, the judgment of sentence of June 6, 2002, and the denial by the district court on March 23, 2002 of his motion to dismiss the indictment due to a violation of the Speedy Trial Act.

## C. Drug Quantity Background

At the time of sentencing, the district judge adopted the guidelines applications contained in the Presentence Report ("PSR"). Accordingly, Dunbar's total offense level was set at thirty-two and Dunbar was sentenced to three concurrent 151-month terms of imprisonment. In the PSR, Dunbar's offense level was determined based upon sixty-eight grams of crack cocaine and thirteen grams of heroin. Therefore, Dunbar's offense level was determined based upon the twelve grams of crack cocaine that Dunbar sold during the May 19, 1999 transaction, the 1.1 grams of heroin that Dunbar sold during the June 8, 1999 transaction, the twelve grams of heroin that Dunbar sold during the June 15, 1999 transaction, and the additional fifty-six grams of crack cocaine, which was "believed to be a conservative estimate of what the defendant possessed during the distribution of 12 grams [of crack cocaine] on May 19, 1999." J.A. at 394-95 (PSR ¶¶ 14, 15, 16, 19). At Dunbar's sentencing hearing on March 21, 2002, the district court adjusted the drug amount and determined that Dunbar should only be held responsible for sixty grams of crack cocaine, which represents the twelve grams that

Dunbar actually sold during the May 19, 1999 transaction and an additional forty-eight grams, which is a more conservative estimate of the amount the DEA agent testified that he observed during the transaction. This adjustment in the drug quantity, however, did not affect Dunbar's offense level.

At Dunbar's jury trial, David Livingston, the undercover DEA agent who was present during the May 19, 1999 transaction, testified that during the transaction Dunbar showed him four to five, half-ounce packages of crack cocaine, in addition to the half-ounce package the DEA agent purchased from Dunbar. These additional packages were not recovered. Livingston further testified that while a full half-ounce package should weigh fourteen grams, dealers typically sell half-ounce packages that actually weigh between twelve and thirteen grams to save product and to avoid stiffer sentences. At the sentencing hearing, forty-eight grams of crack cocaine, which represents the weight of four, twelve-gram bags, was attributed to Dunbar to account for the additional unrecovered crack cocaine.

## II. ANALYSIS

### A. Speedy Trial Act

On appeal, we review de novo the district court's application of the Speedy Trial Act. *United States v. Salgado*, 250 F.3d 438, 453 (6th Cir.), *cert. denied*, 534 U.S. 936 (2001). However, we review for abuse of discretion the district court's decision to grant an ends-of-justice continuance pursuant to § 3161(h)(8). *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000).

On appeal, Dunbar argues that his indictment should have been dismissed under § 3161 of the Speedy Trial Act because eighty-four non-excludable days passed between the day he was indicted and the day his trial commenced. Dunbar bases his argument on two different rationales. First, Dunbar contends that at the June 4, 2001 hearing on his motion for

bond, the district court determined that eighty-four non-excludable days had passed since Dunbar was indicted, and that the district court was bound to abide by this ruling under the law-of-the-case doctrine. Second, Dunbar argues that even if the district court was permitted to revisit the issue, the period covered by the proposed order is not excludable as an ends-of-justice continuance, and therefore, eighty-four non-excludable days passed before Dunbar's trial commenced. Additionally, Dunbar argues that the court should dismiss the indictment with prejudice because over a year has passed since Dunbar was indicted, because the government's key witness has been killed thereby depriving Dunbar of the opportunity to cross-examine, and because the purpose of the Act would be thwarted if courts were not required to adjust their procedures to comply with the Act.

The government argues that Dunbar waived his ability to argue that his rights were violated under § 3161 of the Speedy Trial Act, on the theory that Dunbar failed to make a motion to dismiss his indictment before his trial commenced. The government further argues, asserting various theories, that fewer than seventy non-excludable days passed between the day Dunbar was indicted and the day his trial commenced. The government contends that Dunbar should be estopped from denying that the period covered by the proposed order is excludable delay because he consented to the delay, because the period should be excluded as "other proceedings" involving the defendant, and because the law-of-the-case doctrine is inapplicable, as this doctrine does not apply to interlocutory decisions of the district court. The government further asserts that any dismissal for violation of § 3161 would have been without prejudice and that the government would have reindicted Dunbar; therefore, according to the government, the failure to dismiss was harmless.

The Speedy Trial Act protects defendants' and the public's interest in timely criminal trials. *United States v. Noone*, 913 F.2d 20, 28 (1st Cir. 1990), *cert. denied*, 500 U.S. 906 (1991). Section § 3161(c)(1) of the Act requires that a defendant's

trial commence within seventy days of the date he was indicted or the date he first appeared in court, whichever is later. *United States v. Tinson*, 23 F.3d 1010, 1012 (6th Cir. 1994). Section 3161(c)(1) states:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1). The Act provides the flexibility necessary to conduct fair criminal trials by excluding days from the seventy-day Speedy Trial clock for various pretrial proceedings. *See* 18 U.S.C. §§ 3161(h)(1)-(9); *United States v. Mentz*, 840 F.2d 315, 325 (6th Cir. 1988). If, however, more than seventy non-excludable days pass before the commencement of the trial, the Act mandates dismissal of the indictment upon motion by the defendant. 18 U.S.C. § 3162(a)(2). The trial court has discretion to decide whether to dismiss the indictment with or without prejudice, but in making that decision, the trial court must weigh various statutorily prescribed factors. *See id.*

In the present case, Dunbar was indicted on November 9, 2000, and his trial did not commence until November 1, 2001, which was 357 days later. Thus, Dunbar "has presented a prima facie case of a Speedy Trial Act violation." *Mentz*, 840 F.2d at 326. The parties agree that much of this time is excludable under § 3161(h), but Dunbar argues that eighty-four non-excludable days passed before his trial commenced. The government, however, contends that, regardless of how many non-excludable days passed, Dunbar waived his ability

to argue that his indictment should be dismissed due to a violation of Speedy Trial Act, on the theory that Dunbar failed to make a motion to dismiss his indictment before the commencement of his trial.

Section 3162(a)(2) "requires that the defendant bring a motion for dismissal under the Speedy Trial Act prior to trial." *United States v. White*, 985 F.2d 271, 274 (6th Cir. 1993). This court has held that a defendant waives the right to move for dismissal for a violation of § 3161 if he does not raise the issue until appeal. *Id.* at 274-75.

During the May 24, 2001 hearing, Dunbar moved for reconsideration of his pretrial detention due to a possible violation of his rights under § 3164.[2] The district court scheduled a hearing to review Dunbar's detention on May 30, 2001, but was unable to resolve the § 3164 issue at the May 30, 2001 hearing, and continued the hearing to June 4, 2001. At the June 4, 2001 hearing, the district court calculated that eighty-four non-excludable days had passed since Dunbar's indictment and accordingly ruled § 3164 had not been violated. Because the district court found that more than seventy non-excludable days had passed since Dunbar's indictment, defense counsel indicated that he "would move to dismiss." J.A. at 65. Defense counsel then stated that "if the Court chose to dismiss without prejudice, the Government would likely seek a delay to reindict so that would be an

---

[2] Section 3164 provides that a defendant, who is detained solely because he is awaiting trial, must be released on bond if he is detained for more than ninety non-excludable days prior to the commencement of trial. 18 U.S.C. § 3164. While § 3161(c)(1) ensures that a defendant is brought to trial promptly and the seventy-day period begins to run from the later of the defendant's appearance or indictment, § 3164 ensures that a defendant is not detained too long prior to trial and begins to run from the defendant's first day of confinement. *See* 18 U.S.C. §§ 3161(c)(1) and 3164(b). Despite the district court's finding that § 3164 had not been violated, it released Dunbar on a $10,000 unsecured bond on June 4, 2001. Dunbar does not appeal the district court's ruling that § 3164 was not violated.

exercise in futility." J.A. at 65. While Dunbar's motion to dismiss could have been much clearer, the district court understood that Dunbar was in fact making a motion to dismiss, because the district judge stated, "if you are making a motion to dismiss based on the speedy trial clock having run, that's denied." J.A. at 79. Furthermore, in a written order dated June 8, 2001, the district court explicitly ruled "that [Dunbar's] oral Motion to Dismiss for a violation of the Speedy Trial Act is DENIED." Docket No. 32. Because Dunbar made a motion to dismiss his indictment at the June 4, 2001 hearing, prior to the commencement of his trial, Dunbar has not waived his right to argue that his indictment should have been dismissed due to a violation of § 3161.

Although Dunbar did not waive his right to argue that his indictment should have been dismissed due to a violation of § 3161, at a post-trial hearing on March 21, 2002, the district court denied his motion for reconsideration of his oral motion to dismiss his indictment because the motion for reconsideration was untimely and also on the merits.[3] At the March 21, 2002 hearing, the district court found that only forty non-excludable days passed between the day Dunbar was indicted and the day his trial commenced, and thus the court concluded that § 3161 had not been violated. On appeal, Dunbar contends that the district court erred by recalculating the number of non-excludable days that passed before his trial commenced, on the theory that the court was bound by the law-of-the-case doctrine to its June 4, 2001 ruling that eighty-four non-excludable days had passed.

The law-of-the-case doctrine is rigidly applied to enforce a lower court's obedience to a higher court; however, the

---

[3]When the district judge stated that Dunbar's motion to reconsider was untimely, defense counsel stated that she was actually seeking a ruling on the previous motion to dismiss because she believed that the district court never actually ruled on that motion. The district court's docket entry No. 32, however, reflects that the court did rule on the motion to dismiss.

doctrine is more flexibly applied to reconsideration of earlier decisions by the same court or a coordinate court. *Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 589 (6th Cir. 1995). "At the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time." *Id.* (quoting 1b James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.401 (2d ed. 1994)). The law-of-the-case doctrine does not remove a district court's jurisdiction to reconsider, or otherwise preclude a district court from reconsidering, an issue previously decided in the case. *Id.* at 590. We have previously refused to apply the law-of-the-case doctrine to preclude review of various prejudgment rulings. *See, e.g.*, *Polec v. Northwest Airlines, Inc.* (*In re Air Crash Disaster*), 86 F.3d 498, 517-18 (6th Cir. 1996) (reconsidering rulings about discovery); *Gillig*, 67 F.3d at 590 (reconsidering preclusive effect of liability release given to employer by plaintiff).

In the present case, we do not consider the law-of-the-case doctrine to have precluded the district court from reconsidering its June 4, 2001 finding that eighty-four non-excludable days had passed. First, the June 4, 2001 finding was made in the context of the court's decision on Dunbar's motion to reconsider his detention pursuant to the ninety-day rule contained in § 3164; therefore, once the district court found that fewer than ninety non-excludable days had passed, there was no reason for it to decide whether further days were excludable. Second, the district court's finding regarding the number of non-excludable days is an interlocutory ruling, and thus the court may depart from it for good reason. *See Gillig*, 67 F.3d at 589-90. Third, during the March 21, 2002 hearing, the district court had good reason to depart from its earlier ruling because Dunbar explicitly argued that the seventy-day rule contained in § 3161 had been violated and that the indictment should have been dismissed; therefore, the passage of time might invalidate his jury conviction. Finally, regardless of the law-of-the-case doctrine, we may recalculate

the number of non-excludable days on appeal. *United States v. Jenkins*, 92 F.3d 430, 439 (6th Cir. 1996), *cert. denied*, 520 U.S. 1170 (1997).

Dunbar was indicted on November 9, 2000. Although the Speedy Trial clock began to run on November 9, 2000 because Dunbar was in detention on the criminal complaint at that time, the day of indictment is excluded as "other proceedings" pursuant to § 3161(h)(1). *Mentz*, 840 F.2d at 326. Dunbar was arraigned on the indictment on November 13, 2000, and that date is also excluded as "other proceedings" pursuant to § 3161(h)(1). *Id.* The district court found, and Dunbar does not dispute, that the parties were engaged in plea negotiations for thirty days, from January 21, 2001 to February 19, 2001. We have held that plea negotiations may be excluded as "other proceedings" pursuant to § 3161(h)(1). *United States v. Bowers*, 834 F.2d 607, 609-10 (6th Cir. 1987).

The district court also found, and Dunbar does not dispute, that the potential conflict of interest issue was brought to the court's attention in a hearing before a magistrate judge on March 14, 2001, at which time the government expected Dunbar to request appointed counsel for the purpose of advising him during the plea negotiations. Dunbar did not request appointed counsel at the March 14, 2001 appearance, nor did Dunbar request appointed counsel at subsequent appearances before a magistrate judge on May 14, 2001 and May 15, 2001. Although no formal motion was made before or at the March 14, 2001 appearance, we hold that March 14, 2001 through May 15, 2001 may be excluded under 3161(h)(1) as "other proceedings concerning the defendant." As the First Circuit has sensibly pointed out, a defendant should not be able to stall in obtaining appropriate counsel in order to obtain a dismissal for a violation of § 3161(c)(1). *See Noone*, 913 F.2d at 28.

The government finally made a motion to resolve the potential conflict of interest issue on May 16, 2001. The

conflict of interest issue was not resolved until the district court granted Lusby's motion to withdraw as defense counsel at a hearing on May 24, 2001. The period from May 16, 2001, the day the government filed its motion to resolve the conflict of interest, until May 24, 2001, the day the district court held and concluded its hearing on the motion, is excludable under § 3161(h)(1)(F). *See Henderson v. United States*, 476 U.S. 321, 331-32 (1986); *Mentz*, 840 F.2d at 326. The Supreme Court has distinguished between motions that require a hearing and motions that do not require a hearing. For motions that require a hearing, § 3161(h)(1) provides for the automatic exclusion of "the entire period between the filing of the motion and the conclusion of the hearing" on that motion. *Henderson*, 476 U.S. at 329. Therefore, the entire period between the filing of the motion on May 16, 2001, until the district court held and concluded its hearing on that motion on May 24, 2001, is automatically excluded under § 3161(h)(1)(F).

At the May 24, 2001 hearing, Dunbar personally made a motion to reconsider his detention, and the court set a hearing on that motion for May 30, 2001. The district court was unable to resolve that motion on May 30, 2001, and continued the hearing until June 4, 2001. At the June 4, 2001 hearing, the district court re-analyzed the period between the date Dunbar was indicted and the date his trial commenced, and the court concluded that only eighty-four days of non-excludable delay had passed. Nevertheless, the district court ordered that Dunbar be released pursuant to a $10,000 unsecured bond. We hold that the period from May 24, 2001 through June 4, 2001 is automatically excludable pursuant to § 3161(h)(1)(F), as it constitutes delay between the filing of a motion and the conclusion of a hearing on that motion. *See Henderson*, 476 U.S. at 331-32; *Mentz*, 840 F.2d at 326.

At the March 21, 2002 hearing, the district court found that the period between November 13, 2000 and January 5, 2001 was excludable delay because the parties had signed a proposed order stipulating that the period would be excluded

as an ends-of-justice continuance pursuant to § 3161(h)(8). Although the proposed order was not timely presented to the district court, the court retroactively found that it would have granted the motion, and thus determined that the time could be excluded under § 3161(h)(8). On appeal, Dunbar argues that the district court did not have authority to grant this motion *nunc pro tunc*, as § 3161(h)(8) requires the district court to conduct a contemporaneous balancing test when deciding whether to grant an ends-of-justice continuance.

Section 3161(h)(8)(A) provides for the exclusion of:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Section 3161(h)(8)(B) requires the district court to consider various factors when deciding whether to grant an ends-of-justice continuance including, among other things, whether failure to grant a continuance will make further proceedings impossible or result in a miscarriage of justice and whether the case is so unusual or complex that it is unreasonable to expect adequate preparation within the time limits established by the Act. We have explained that this balancing must be done prior to granting the continuance, and that the purpose of the contemporaneous balancing test is to ensure that the court actually grants the continuance to serve the ends of

justice, rather than merely rationalizes a delay after the fact. *United States v. Richmond*, 735 F.2d 208, 215-16 (6th Cir. 1984).[4]

The government contends that the time period covered by the stipulation may be excluded pursuant to § 3161(h)(1) because the stipulation indicates that the parties agreed to use the period from November 13, 2000 to January 5, 2001 to prepare pretrial motions. While the government correctly points out that delay may retroactively be excluded under § 3161(h)(1), we have previously held that time requested to prepare pretrial motions may not be excluded as "other proceedings concerning the defendant." *See United States v. Moran*, 998 F.2d 1368, 1370-71 (6th Cir. 1993). The government relied on *United States v. Crawford*, 982 F.2d 199, 203 (6th Cir. 1993), which was decided six and one-half months before *Moran*, for the proposition that time used to prepare pretrial motions may be excluded pursuant to § 3161(h)(1). In the context of analyzing the entire period between the date the defendant was indicted and the date his trial commenced, *Crawford* states that a fifteen-day period that the defendant's attorney requested in order to file pretrial motions may be excluded pursuant to § 3161(h)(1). *Crawford*, 982 F.2d at 203. This statement, however, was not necessary to the holding in *Crawford* because even after excluding this fifteen-day period, we remanded the case with instructions to vacate the defendant's conviction and to dismiss his indictment due to a violation of § 3161(c)(1). *See id*. at 205. *Moran*, however, dealt exclusively with the issue of whether time used to prepare pretrial motions may be excluded, and actually held explicitly that such time is not excludable because § 3161(h)(1)(F) only covers the time

---

[4]Although a district court must conduct the balancing test prior to granting a continuance on the basis of the ends-of-justice exception, the district court may articulate its reasons after the fact. *See United States v. Cianciola* 920 F.2d 1295, 1299-1300 (6th Cir. 1990), *cert. denied*, 501 U.S. 1219 (1991).

period between the filing of a motion and the conclusion of a hearing on that motion, thereby indicating that Congress did not intend to exclude time used to prepare pretrial motions. *See Moran*, 998 F.2d at 1370-71. *Moran* is controlling here.[5] Therefore, the time period covered by the proposed order in this case may not be excluded on the theory that time used to prepare pretrial motions may be excluded pursuant to § 3161(h)(1).

The government also contends that the time period covered by the proposed order may be excluded because Lusby's signature on the stipulation indicates that the defendant agreed to the continuance, and thus the defendant should not now be allowed to object to the delay.[6] In two published opinions, we have made the sweeping statement that where a defendant requested or at least consented to delay pursuant to an ends-of-justice continuance, he is barred from arguing that such continuance was not in the interest of justice. *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000); *Monroe*, 833 F.2d at 99. In *Monroe*, this statement was tempered by the fact that the district court made contemporaneous findings that would justify an ends-of-justice continuance, and on appeal the defendant challenged the propriety of those findings. *Monroe*, 833 F.2d at 99. In *Howard*, however, the district court granted a continuance upon the defendant's

---

[5]We note that *Moran* did not invalidate *United States v. Monroe*, 833 F.2d 95, 99 (6th Cir. 1987), which held that time requested to file pretrial motions may be excluded through an ends-of-justice continuance pursuant to § 3161(h)(8). *See Moran*, 998 F.3d at 1372. Such a continuance, however, requires the district court to conduct the contemporaneous balancing test. *Id*.

[6]The stipulation, which is in the form of a proposed order, provides: The parties stipulate, and the Court finds, that this case is sufficiently complex due to the volume of discovery and the legal and factual issues presented that the filing of motions and the trial of the case cannot be completed within the ordinary time provided.
J.A. at 44.

request without making substantial contemporaneous findings. In a prior unpublished opinion, we recounted the district court's findings as follows: "The government was opposed to the continuance; however, the court noted its concern for fairness to both sides. The government asked if 'this is a continuance being in the interests of justice under the statute?' The court stated that it was, and continued the trial until August 15, 1994." *United States v. Howard*, No. 94-6543,1997 WL 705077, at *2 (6th Cir. Nov. 6, 1997) (citation omitted). On a subsequent appeal, we held: "Because Howard requested this continuance, he is barred from arguing that it was not in the interests of justice." *Howard*, 218 F.3d at 562. *Howard* indicates that when a district court grants a continuance upon the defendant's request, we may uphold that continuance in the absence of substantial contemporaneous findings.

Dunbar contends that this case is distinguishable because the proposed order was never presented to the district court; therefore, the district court did not make any contemporaneous findings that would justify an ends-of-justice continuance. Careful review of the record, however, reveals that the district court did in fact grant a continuance, pursuant to a "stipulation" encompassing most of the time covered by the parties' proposed order. On November 30, 2000, following the pretrial conference, the magistrate judge issued a summary order, specifying that the parties had "stipulated" that pretrial motions would be not be due until January 5, 2001. The district court's docket sheet indicates that the district judge approved this summary order. Thus, although the district court did not state its reasons for granting the continuance, it did grant the continuance to January 5, 2001 pursuant to the parties' "stipulation." By signing the proposed stipulated order and also stipulating to the continuance at the pretrial conference, Dunbar led the prosecution to believe that he needed additional time to prepare for trial, and that he agreed that the continuance served the ends of justice. Moreover, by stipulating to the continuance at the pretrial conference, Dunbar led the district

court to believe that he needed additional time to prepare pretrial motions.

Although we cannot be certain that the "stipulation" entered into at the pretrial conference was identical to the proposed order in all respects, we can assume that the proposed order accurately reflects the parties' intentions and the arguments advanced during the pretrial conference. Thus, we hold that the district court did in fact grant an ends-of-justice continuance at the November 30, 2000 pretrial conference and that granting an ends-of-justice continuance in order to file pretrial motions is permissible under *Monroe*; therefore, the district court did not abuse its discretion. *Monroe*, 833 F.2d at 99. Moreover, having stipulated to the continuance, Dunbar may not now argue that the continuance did not serve the ends of justice. *Howard*, 218 F.3d at 562. We emphasize that we are not holding that delay may be excluded in the absence of any contemporaneous findings justifying an ends-of-justice continuance. Rather, we are holding that the facts of this case — the written stipulation, the notation of a "stipulation" on the pretrial order, and the fact that Dunbar did not complain about the delay until after the entire period covered by the stipulation had passed — indicate that the district court granted an ends-of-justice continuance, and that Dunbar consented to that continuance. Therefore, we hold that the period from November 30, 2000 through January 5, 2001 may be excluded as an ends-of-justice continuance. Because the district court did not issue this order until November 30, 2000, we will assume that the period from November 14, 2000 through November 30, 2000 is not excludable delay.

Voir dire in Dunbar's trial commenced on November 1, 2001, and thus the Speedy Trial clock stopped running on that date. *Mentz*, 840 F.2d at 326 n.21. At the March 21, 2002 hearing, the district court found that all of the delay between June 4, 2001 and the beginning of voir dire in Dunbar's trial was excludable pursuant to § 3161(h)(1) or (h)(8). Dunbar does not contest these findings on appeal. After subtracting

the delay covered by the ends-of-justice continuance granted at the pretrial conference, we conclude that at most fifty-six non-excludable days passed; therefore, the district court correctly refused to vacate Dunbar's conviction and to dismiss his indictment.[7] This holding makes it unnecessary for us to determine whether the twenty-two days that passed between February 20, 2001, when the government allegedly learned of Lusby's potential conflict of interest, and March 14, 2001, when the potential conflict of interest was brought to the court's attention, may be excluded as "other proceedings concerning the defendant" pursuant to § 3161(h)(1).

## B. Drug Quantity

This court reviews for clear error the district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes. *United States v. Baro*,

---

[7] The Speedy Trial clock commenced on November 9, 2000, the day Dunbar was indicted, but that date is excludable. Three non-excludable days passed from November 10, 2000 through November 12, 2000. November 13, 2000, the day Dunbar was arraigned, is excludable. We will assume that sixteen non-excludable days passed between November 14, 2000 and November 30, 2000. November 30, 2000 through January 5, 2001, the period covered by the "stipulation," is excludable because the court granted an ends-of-justice continuance. Fifteen non-excludable days passed from January 6, 2001 through January 20, 2001. January 21, 2001 through February 19, 2001, the period allotted to plea negotiations, is excludable. We assume, without deciding, that twenty-two non-excludable days passed between February 20, 2001 through March 13, 2001. March 14, 2001 through May 16, 2001 is excludable due to the Dunbar's failure to obtain appropriate counsel, and May 16, 2001 through May 24, 2001 is excludable due to the government's pending motion to resolve the potential conflict of interest issue. May 24, 2001 through June 4, 2001 is excludable due to Dunbar's motion to review his bond. Finally, all of the time between June 4, 2001 and the commencement of Dunbar's trial on November 1, 2001 is excludable due to repeated requests for continuances and an adjournment due to the unavailability of an attorney and a witness. Therefore, we conclude that at most fifty-six non-excludable days passed between the day Dunbar was indicted and the day his trial commenced.

15 F.3d 563, 568 (6th Cir.), *cert. denied*, 513 U.S. 912 (1994). At sentencing, the government must prove the quantity of drugs involved by a preponderance of the evidence. *Id.* at 569. "Where the amount is uncertain, the district court is encouraged to 'err on the side of caution' and only hold the defendant responsible for that quantity of drugs for which 'the defendant is more likely than not *actually* responsible.'" *Id.* (quoting *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir. 1990)). The evidence used to prove the quantity of drugs must "have a minimal level of reliability beyond mere allegation." *Id.* (quoting *United States v. West*, 948 F.2d 1042, 1045 (6th Cir. 1991)).

In this case, the district court did not commit clear error by considering the forty-eight grams of crack cocaine that the defendant possessed during the May 19, 1999 transaction when determining Dunbar's offense level. At trial, the undercover DEA agent who was present during the May 19, 1999 transaction testified that during the transaction, he told Dunbar that the half-ounce package that he purchased felt a little light. The DEA agent testified that, in response, Dunbar showed him four to five additional half-ounce packages. The agent further testified that while half-ounce packages should weigh fourteen grams, they usually only weigh twelve to thirteen grams on the street. The PSR stated that a conservative estimate of the additional amount in the other packages would be fifty-six grams, and added to that the twelve grams actually sold by Dunbar in order to reach a total of sixty-eight grams, which warranted an offense level of thirty-two. At Dunbar's sentencing hearing, on March 21, 2002, the district court found that forty-eight grams would in fact be the most conservative estimate, and added to that the twelve grams actually sold by the defendant in order to reach a total of sixty grams. Despite this change in the drug quantity, the total amount of sixty grams still warranted an offense level of thirty-two. United States Sentencing Guidelines § 2D1.1(c)(4).

We hold that district court did not commit clear error by finding that the government had proven the drug quantity of forty-eight grams by a preponderance of the evidence. The government provided testimony of an eye-witness to the transaction. Furthermore, this eye-witness was a DEA agent who had experience with drugs sales and thus could reliably estimate the quantity of and type of drug based upon his observations. The cases relied upon by Dunbar for his argument that the government's evidence is not sufficient are distinguishable because they involve estimates that a large number of drug transactions occurred based solely on extrapolations from small samples of actual drug transactions. In these cases, the courts found that the extrapolations were too speculative to meet the preponderance of the evidence standard. *See, e.g.*, *United States v. Rivera-Maldonado*, 194 F.3d 224, 230-33 (1st Cir. 1999) (drug quantity estimated from two-hour composite tape showing a few transactions not sufficient to establish quantity sold over course of five and one-half month period by preponderance of the evidence); *Baro*, 15 F.3d at 569 (pattern of kilogram purchases not sufficient to establish quantity by preponderance of the evidence). Conversely, in this case, the DEA agent actually observed the packages, Dunbar indicated that the packages were half-ounces of crack cocaine by offering them in lieu of the half-ounce package that he sold to the DEA agent, and the district court calculated the forty-eight-gram quantity using the most conservative estimate possible.

### III. CONCLUSION

Based on the foregoing analysis, we **AFFIRM** Dunbar's conviction and sentence.