**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0738n.06

**No. 09-6291**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 23, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| 729, INC., dba Rodney's; WILLIAM FOXX, dba Viva LaFoxx; THE VENUS LOUNGE, INC., dba Club Venus; PATSY HIATT; ALLYSON K. STURGEON; WANDA BLANKENSHIP, | ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| and | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| FOSTER, INC., dba The Pad, | ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| KIM FORAN, | ) ) | |
| Plaintiff-Intervenor, | ) ) | |
| v. | ) ) | |
| KENTON COUNTY FISCAL COURT, | ) ) | |
| Defendant-Appellee. | ) ) ) | |

BEFORE:  GUY and GRIFFIN, Circuit Judges; and BARZILAY, Judge.[*]

GRIFFIN, Circuit Judge.

---

[*]The Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

After remand, plaintiffs appeal the district court's renewed grant of summary judgment in favor of defendant. We affirm.

I.

On August 17, 2004, defendant Kenton County Fiscal Court adopted Ordinance No. 451.7, which regulates adult businesses in the county. The ordinance controls the application and issuance of licenses; determines how, where, and when sexually-oriented entertainment activities can occur; and provides a process for inspection and enforcement of its provisions. Relevant here, section 451.12 applies to cabarets and sexually-oriented theaters that provide sexually-oriented entertainment, i.e., dancing, singing, talking, modeling, gymnastics, acting, other forms of performing, or individual conversations with customers for which some type of remuneration is received, when performed by a sexually-oriented entertainer. It requires such businesses, their managers, and entertainers to obtain licenses from the Kenton County License Inspector by, *inter alia*, passing a background check and paying an annual $3,000 business or $155 individual fee.

In this case, four adult entertainment establishments within Kenton County and a number of their employees filed an action claiming that the ordinance was unconstitutional. Cross motions for summary judgment were filed, and the district court granted judgment in favor of the County. Plaintiffs appealed, arguing that: (1) the ordinance's "commingling provision" violated the First Amendment; (2) the ordinance violated plaintiffs' rights under the Contracts Clause of Article 1, § 10 of the Constitution; (3) the ordinance's judicial review provisions did not satisfy the First Amendment's prompt judicial review requirements; and (4) the ordinance's licensing fees were

excessive, content-based taxes that violated the First Amendment. In plaintiffs' previous appeal, our court affirmed the district court's grant of summary judgment in favor of defendant on the first three constitutional challenges, but vacated and remanded for further proceedings on the fourth. We directed the district court to determine: "(1) whether the fee's total amount will deter the exercise of First Amendment rights; (2) whether the measures associated with the fee's amount are narrowly tailored means of advancing the County's interests; and (3) whether the County's cost estimates for those narrowly tailored measures are reasonable."[1] *729, Inc. v. Kenton Cnty. Fiscal Court*, 515 F.3d 485, 505 (6th Cir. 2008).

On remand, Kenton County presented new evidence of its costs to administer and enforce the ordinance. It submitted the deposition of Captain Teal Nally of the Covington Police Department, who testified that undercover investigations are the most effective way to police and enforce the County's interest in combating the negative secondary effects of adult entertainment businesses, including prostitution, because uniformed officers serve as a distinct warning to all adult entertainment employees to cease any illegal activity. It also deposed Robert Reinecke, an accountant for the City of Covington, who testified that most city police officers earn an hourly wage of at least $39.92. Based on that figure, and on the testimony of Captain Nally and former License

---

[1]We apply the same analysis here as that is the law of the case, as well as the law of the Circuit. *Gillig v. Advanced Cardiovascular Sys., Inc.*, 67 F.3d 586, 589 (6th Cir. 1995) (citation omitted); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

Inspector Roswald Richardson, the district court determined that the County will spend $199.60 in personnel costs to conduct one background check, for a total of $45,000 annually; that the cost to administer the ordinance will be at least $10,857.55 annually; and that it will cost the County a minimum of $1,836.32 per week to operate a standard undercover investigation run by the Covington Police Department. Citing these costs as support for the $3,000 and $155 fees, the court once more granted summary judgment for the County.

Plaintiffs timely appeal.

## II.

We review the district court's grant of summary judgment *de novo. Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we must view the evidence in the light most favorable to the nonmoving party. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007).

## III.

After remand, plaintiffs argue that the district court erred in granting summary judgment in favor of Kenton County because (1) the $3,000 adult business licensing fee is so excessive that it

deters the exercise of First Amendment rights; (2) the fee is not narrowly tailored to address the alleged secondary effects of the targeted businesses; and (3) Kenton County's cost estimates in support of the fee are not reasonable. Plaintiffs also contend that there are genuine issues of material fact regarding the validity of the County's licensing fee that should preclude the district court's grant of summary judgment. For the reasons that follow, we disagree and affirm.

A.

Plaintiffs' argument that the $3,000 licensing fee for businesses unconstitutionally deters the exercise of First Amendment rights is without merit. The only evidence plaintiffs presented was the affidavit of Bruce Lagory, presumably an owner of an adult cabaret in Covington, Kentucky, who asserted that he had conversations with adult business owners in Kenton County who allegedly told him that "since the County adopted its Ordinance their business either 'closed or ceased operating.'" *729, Inc. v. Kenton Cnty. Fiscal Court*, 667 F. Supp. 2d 719, 727 (E.D. Ky. 2009) (quoting Lagory Affidavit, Doc. # 73-4). The district court correctly rejected this inadmissible evidence. *Id.* at 727-28. Lagory's affidavit is vague and inconclusive regarding a causal connection between the ordinance and the alleged closing of any adult-entertainment businesses. Moreover, it is inadmissible hearsay, which cannot defeat the County's properly supported motion for summary judgment. *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991). Merely asserting that the fee is exorbitant, without evidentiary support, is insufficient to withstand the County's motion for summary judgment.

B.

Next, we reject plaintiffs' constitutional claim regarding the undercover police costs because the administrative costs are sufficient to support the $3,000 licensing fee, irrespective of the undercover police costs. The evidence shows *infra* that the County will spend $55,857.55 on background checks and other expenses, which exceeds the $46,875 revenue from licensing fees, even when the estimated undercover investigation costs are excluded. *729, Inc.*, 667 F. Supp. 2d at 723-25. Plaintiffs have not submitted any documentary evidence to the contrary. Rather, their sole argument is that the licensing fee is unreasonable because the City of Covington has a $155 adult business licensing fee that is less than Kenton County's $3,000 fee. However, the difference between the fees does not substantiate plaintiffs' claim because, as the district court observed, "[t]here has been no evidence that the $155 Covington fee actually reflects the costs incident to administration of the license"; and, on the contrary, it seems likely that Covington's "$155 fee . . . [is] insufficient to cover all of the City's administrative costs[.]" *Id*. at 725. Accordingly, we conclude summary judgment was warranted because the $3,000 licensing fee is more than offset by the other costs of administering Kenton County's ordinance.[2] Regarding the other costs, we agree

---

[2]At oral argument, plaintiffs' counsel asserted for the first time that we should compare the individual cost to the individual fee, rather than compare the total costs to the total fees. However, that would require the County to constantly recalculate its fees, and plaintiffs have cited, and we have found, no authority suggesting that is something the First Amendment requires. *Cf. Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 395 (6th Cir. 2001) (also using total expenses and total costs).

with the district court's analysis that the license administration costs are a narrowly tailored means of advancing the legitimate interests of the ordinance.

C.

Finally, we reject plaintiffs' contention that the County's cost estimates are "patently unreasonable." Although plaintiffs are rightly skeptical of the County's asserted need for "[a] $15,000 computer system for what was at the time five adult businesses" and for the License Inspector to spend "[f]orty-two hours 'listening to general questions and complaints[,]'" every year, these expenses were excluded from the district court's analysis. The district court explained that "the up-front costs articulated by the License Inspector for the first year of administration . . . [are] too speculative[,]" and it excised the "$17,437.55 figure . . . includ[ing] the one-time fee of $15,000 for a computer database" from Mr. Richardson's estimate. *729, Inc.*, 667 F. Supp. 2d at 724. The district court also used an "annual figure of $10,857.55 in costs to the County associated with the License Inspector, rather than Mr. Richardson's $15,271.08 figure that included unsubstantiated 'other costs,' such as 'time spent by the License Inspector's Office dealing with general questions and complaints, [and] time spent coordinating with other departments in Kenton County." *Id.* at 725. Accordingly, plaintiffs' objections to the County's cost estimates take aim at straw men and are therefore devoid of merit.

The total annual cost of $55,857.55, as found by the district court, is not genuinely disputed. The $45,000 cost for background checks was determined by multiplying a Grade 4 police officer's $39.92 per hour wage by 5 hours, per Captain Nally's testimony, and then multiplying that number

by 225 entertainers and 4 businesses. *729, Inc.*, 667 F. Supp. 2d at 725 n.8. The $10,857.55 figure for a license inspector was calculated by using Mr. Richardson's testimony regarding the costs to process and review 235 applications at a rate of $21.09 per application ($4,956.15); to attend hearings and assess points for ordinance violations, based on the hourly wage of $36.93 multiplied by 40 hours per year ($1,477.20); to spend 40 hours per year on regular inspections, multiplied by the wage of $36.93 ($1,477.20); and for equipment and supplies associated with issuing licenses ($2,947). *Id.* at 725 n.7. Following our review, we conclude that these costs do not offend the First Amendment.

IV.

For these reasons, we affirm the judgment of the district court.